[Civ. No. 11603. First Dist., Div. One. Aug. 6, 1941.]

KATHERINE HELMUTH, Plaintiff and Respondent, v. KEMP FRAME et al., Defendants; ANGELUS MOTORS, INC. (a Corporation), Appellant; FRANK JULIO, Cross-Complainant and Respondent.

Bronson, Bronson & McKinnon for Appellant.

Thornton Wilson for Respondents.

WARD, J.—This is an appeal by defendant and cross-defendant Angelus Motors, Inc., a corporation, from a judgment rendered following a verdict by a jury in favor of the plaintiff and cross-defendant Katherine Helmuth and in favor of cross-defendant and cross-complainant Frank Julio in an action for personal injuries arising out of an automobile accident. The only point raised upon appeal is the question of the ownership, at the time of the accident, of the automobile driven by defendant Kemp Frame and the resulting responsibility for injury or damage arising from its use.

Plaintiff Katherine Helmuth, a guest in an automobile operated by Frank Julio, filed an action to recover damages for personal injuries sustained by her as the result of a collision between the Frame and Julio automobiles. She named Frame as the defendant operator of one of the cars, and Angelus Motors, Inc., and Commercial Credit Company, corporations, as its owners. (California Vehicle Code, sec. 402.) Both of these companies by answer denied negligence and their respective ownership of the Frame car. Frame filed a cross-complaint against plaintiff and Julio, and Julio in turn filed a cross-complaint for personal injuries and property damage against Frame and the two corporations.

The facts appear as follows: In 1937 Angelus Motors, Inc., sold the car, operated at the time of the accident herein by defendant Frame, to Phil Larsen on a conditional sales contract. The Commercial Credit Company, a finance company, bought the contract and appeared as legal owner on the "pink slip" certificate of ownership. On February 14, 1938, the car was repossessed by the finance company and turned over to the Angelus Motors, Inc., the latter company being required to pay the former's loss in connection with the contract. This loss was fully paid on March 31, 1938, the Angelus company thus becoming the legal owner and entitled to registration as such. Whether or not the finance company endorsed and delivered the pink slip to the Angelus company at the time is a question of fact. The department of motor vehicles was not notified of the change of ownership. On April 7, 1938, the Angelus company obtained a loan from the finance company on the car, executing a promissory note and trust receipt in this connection. The finance company thus became entitled to the pink slip, but not as a conditional vendor. (Vehicle Code, sec. 402.) On June 2, 1938, the Angelus company sold the car to Frame on a conditional sales contract. The accident occurred the next day. Some days thereafter, on June 13, 1938, the Angelus company presented the Frame contract to the finance company to be discounted, and paid off its loan to that company as evidenced by the promissory note. The finance company then sent the certificate of ownership and an undated endorsement by it to the motor vehicle department and caused registration in its name as legal owner under certificate issued on June 22, 1938. Later the Frame contract was re-

jected by the finance company for credit reasons. On the date of the accident the registration certificate was in the name of Larsen, the finance company being indicated as the legal owner. The actual possession of the car and the ownership was in Frame, subject to any rights of the Angelus company as conditional vendor.

The trial court granted a motion for a directed verdict in favor of the finance company, and denied a similar motion made by the Angelus company. It refused certain instructions offered by the latter relating to an endorsement, or lack thereof, and delivery of the pink slip by the finance company following the car's repossession by the Angelus company on Larsen's default. During the instructions referring to the subject of ownership, and the motion for a directed verdict, the court stated: "The motion being granted upon the ground that the evidence was uncontradicted with reference to the facts surrounding the ownership of the automobile in question and by virtue of that fact it becomes a matter of law for the court to decide and the court has ruled as a matter of law that the Commercial Credit Company at the time of this accident was not the owner of the automobile and ownership was in Angelus Motors." The jury returned verdicts in favor of plaintiff Helmuth against Frame and Angelus Motors, Inc.; and in favor of cross-complainant Julio against the same defendants. In the present appeal the Angelus company contends that the question of whether ownership was in it or in the finance company should have been submitted to the jury. The finance company has not filed a brief on this appeal but appears as respondent in a separate appeal taken by plaintiff Helmuth and cross-complainant Julio from the judgment in its favor. (See *Helmuth* v. *Frame*, Civil No. 11751, *post*, p. 381 [115 Pac. (2d) 852], filed this date.)

Vehicle Code, sec. 402, imposes liability on the owner of an automobile driven by another with the consent or permission of such owner. The section also provides that if a motor vehicle is sold under a conditional sales contract whereby title remains in the vendor, the vendor is not deemed to be the owner within the provisions imposing liability on the owner. Section 177 of the same code provides that a dealer upon transferring, except to another dealer, a vehicle of a type subject to registration shall immediately give notice

of such transfer to the department of motor vehicles. The conditional sale to Frame was made on a Saturday and the accident occurred on the following day. Whatever may be said of the harshness of the rule, it has been held that a conditional sale vendor, to be relieved of liability under the provisions of sec. 402, must strictly comply with sec. 177. (*Guillot* v. *Hagman,* 30 Cal. App. (2d) 582 [86 Pac. (2d) 865], application for hearing in the Supreme Court denied; *Bunch* v. *Kin,* 2 Cal. App. (2d) 81 [37 Pac. (2d) 744].) Section 178 provides: ''Whether notice of a transfer be given or not as hereinbefore required an owner who has made a *bona fide* sale or transfer of a vehicle and has delivered possession thereof to a purchaser and has made proper endorsement and delivery of the certificate of ownership as provided in this code shall not by reason of any of the provisions of this code be deemed the owner of such vehicle so as to be subject to civil liability for the operation of such vehicle thereafter by another.''

In the first instance, notice of transfer and change of ownership was not given to the motor vehicle department at the time the Angelus company paid the indebtedness guaranteed the finance company in connection with the Larsen contract. It may be conceded that at such time, March 31, 1938, there was a *bona fide* transfer of the vehicle to the Angelus company. However, that company contends that the evidence is insufficient as a matter of law to show an endorsement and delivery of the certificate of ownership at that time; but that, regardless of this, by reason of its subsequent loan to the Angelus company on the car, the finance company became entitled to the certificate even if it was not already the holder thereof. In the appeal as presented by the Angelus company, this is the heart of the case, namely, that the finance company never ceased to be the owner within the meaning of the Vehicle Code provisions.

The Angelus company cites cases involving various facts where the record registration is conclusive as to rights and liabilities, or, as held, gives rise to an inference in accord with the registration. (*Irwin* v. *Pickwick Stages System, Inc.,* 134 Cal. App. 443 [25 Pac. (2d) 998]; *Collard* v. *Love,* 17 Cal. App. (2d) 72 [61 Pac. (2d) 458]; *Coca Cola Bottling Co.* v. *Feliciano,* 32 Cal. App. (2d) 351 [89 Pac. (2d) 686]; *Hammond* v. *Hazard,* 40 Cal. App. 45 [180 Pac. 46]; *De Puy*

v. *Shay*, 127 Cal. App. 476 [16 Pac. (2d) 158] ; *Redwine* v.
*Trowbridge*, 99 Cal. App. 762 [279 Pac. 666] ; *Huddy* v.
*Chronicle Pub. Co.*, 15 Cal. (2d) 554 [103 Pac. (2d) 421].)
These cases hold that in determining title it shall be deemed
that the transfer of an interest in a vehicle is incomplete
until a new certificate of registration has been issued; that
the word "owner" generally refers to the registered owner;
that evidence of such transfer may justify the denial of a
motion for a nonsuit or warrant a finding of legal ownership
and that a jury need not accept as true evidence offered
contradictory thereof.

It has also been held that the true owner, although he
may not be registered as such in the records of the vehicle
department, may be liable in damages upon the theory of
permissive use. The true owner should not escape liability
imposed on him in that capacity simply because he has in-
advertently neglected or deliberately failed to comply with
the registration provisions of the Vehicle Code. *Schmidt* v.
*C. I. T. Corporation*, (14 Cal. App. (2d) 92 [57 Pac. (2d)
1016]), exemplifies the doctrine that the code provisions were
not enacted for the benefit of those who fail to obey the law.
At page 95, the court said: "It is true that appellant was
never the *registered* owner of the automobile but we are of
the opinion that it became the owner within the meaning of
section $1714\frac{1}{4}$ of the Civil Code immediately upon the trans-
fer from Paul Kunde. Its failure to comply with said sub-
division b constituted a misdemeanor (Motor Vehicle Act,
sec. 153) and appellant cannot take advantage of its own
wrong. (Civ. Code, sec. 3517.) In other words it must bear
the burden of ownership under said section $1714\frac{1}{4}$ of the
Civil Code in the same manner as though it had complied with
the provisions of said subdivision b of section 45 of the Motor
Vehicle Act upon purchasing the automobile from Paul
Kunde." Appellant Angelus company contends that the
Schmidt case is distinguishable because there the endorsed
certificate of ownership was delivered by the vendor, which
fact it contends does not appear in the present case as a
matter of law.

Here the Angelus company did not cause the car to be
registered in its name when it paid the finance company
the balance due on the Larsen contract and became the legal

owner and entitled to possession. It subsequently "floored" the car, that is, borrowed money on it with the use of the pink slip as security, offered it for sale, actually sold it to Frame by conditional sale on the strength of its ownership, and eighteen days thereafter notified the vehicle department of such sale. In the meantime, as above stated, the accident had occurred. Irrespective of whether the Angelus company or the finance company held the pink slip as the conditional sales vendor, it was the duty of the Angelus company to comply with the provisions of the Vehicle Code by notifying the department of the Frame transaction. Its failure to do so renders it liable as conditional sales vendor.

Relative to appellant's contention that the question of ownership between it and the finance company was not proven as a matter of law, but should have been submitted to the jury, and that the order for a directed verdict was erroneous, it has been held that a trial court may not weigh the evidence on a motion for a directed verdict; that in the determination thereof the evidence of the adverse party and reasonable inferences that may be drawn therefrom must be conceded as true. (*Estate of Lances,* 216 Cal. 397 [14 Pac. (2d) 768].) The rule is that if there is any evidence contradictory to an inference of legal ownership, the motion for a directed verdict should be denied. The language used in *Engstrom* v. *Auburn Auto. Sales Corp.,* 11 Cal. (2d) 64, 70 [77 Pac. (2d) 1059], that "an *inference* is dispelled as a matter of law when it is rebutted by clear, positive and uncontradicted evidence which is not open to doubt even though such evidence is produced by the opposite side" and that "if the opposition evidence is conflicting, vague or uncertain, or is weakened by contradictions or improbabilities, an inference is not dispelled as a matter of law," is simply emphatically expressive of the thought and the principle that if any contradictory evidence appears the inference is not dispelled and the motion for a directed verdict should be denied. To hold that the words "not open to doubt" mean "not open to reasonable doubt" or "not open to any doubt, reasonable or otherwise" would be placing a false construction upon the intent of the writer of that opinion. Such a construction would impose upon the trial court the duty of weighing the evidence of the adverse party, which is specifically prohibited. (*Estate of Lances, supra.*) If the infer-

ence is contradicted by direct evidence or by other inferences reasonably drawn from proven facts, the jury should be permitted to pass upon the merits of the issue.

In *Hunt* v. *United Bank & Trust Co.*, 210 Cal. 108, 117 [291 Pac. 184], approved in *Estate of Lances, supra,* the court said: "Such a motion [for a directed verdict] is in the nature of a demurrer to the evidence, and is governed by practically the same rules." If the evidence herein on the subject of ownership had been averred as facts in a pleading, and objections thereto interposed, could it be said that as a matter of law a conclusion is reasonably deducible that the finance company was in fact the legal holder of the pink slip? In other words, is there any evidence contradicting an inference of legal ownership? The manager of the finance company testified that the pink slip was returned to the Angelus company at the time of the settlement by them of the Larsen contract. If so, the finance company was no longer the legal owner and therefore no duty was imposed upon it in connection with the subsequent sale to Frame, and it was not subject to liability for the operation of the vehicle. Up to this point the inference of the finance company's liability as legal owner had been rebutted by "clear, positive" testimony. Likewise the testimony was "uncontradicted." The manager of the Angelus company testified that he had no knowledge on the subject. The testimony of the manager of the finance company was not "vague or uncertain" and up to this point not "weakened by contradictions or *improbabilities.*" (Italics added.) (*Engstrom* v. *Auburn Auto. Sales Corp., supra.*) The inference of ownership in the finance company had been dispelled even adopting a strict construction of the language of the Engstrom case.

On further examination it developed that the manager of the finance company had not personally delivered the pink slip to the Angelus company at the time of the Larsen settlement; that certain notations of transactions were often made in the finance company's office records, in some instances by accountants, clerks or by the office manager himself. The statement of the manager of the finance company that under the date of March 31, 1938, the "folder" bore the notation, marked by the manager, "P to Dlr" (interpreted to mean

"Pink Certificate to Dealer"), could hardly be classified as "opposition evidence" of an "improbability," upon which it could be reasonably claimed that the inference was not dispelled as a matter of law. On the contrary, it appears as evidence tending to corroborate the manager's original statement. Without weighing the evidence, in the sense of the credibility of the witnesses, there appear in the record certain factual matters from which deductions could reasonably be drawn that there was a delivery by the finance company to the Angelus company of the pink certificate. These facts appear as follows: There was no direct denial of its delivery; no good reason has been advanced why the finance company, at that time without any interest in the vehicle, should have retained the pink slip; there was a good reason why the Angelus company should obtain its possession; ordinarily dealers do not "floor" a car unless they have possession of the ownership certificate; to obtain the loan on the "floored" car it would have been necessary that the Angelus company deliver the slip to the finance company. There was no evidence of sufficient substantiality to raise a conflict against the inference drawn from proven facts that the certificate was delivered to the Angelus company at the time of the Larsen default. Any suggestion that the notations on the folder might have been inserted after the accident with the thought of making a case of freedom from liability by the finance company is a mere conjectural possibility, and from the evidence presented there is no basis upon which to declare it a probability.

Assuming an inference of ownership in the finance company, and assuming that such company at the time of the payment of the Larsen contract by the Angelus company failed to actually deliver the pink slip to the latter, we are confronted with the fact that not only was the finance company not a "dealer" (Vehicle Code, sec. 180), but it was not the conditional sales vendor in the contract with Frame, nor, according to the record, did it have any information regarding such contract until about ten days subsequent to the sale of the car.

The evidence is sufficiently clear, positive and undisputed that ownership liability at the time of the accident rested with the Angelus company; that the finance company was not the title owner as contemplated by the provisions of

the Vehicle Code. The order directing a verdict in favor of the finance company was proper, and no prejudicial error appears in the court's instruction that appellant was the owner of the car.

For a further consideration of the question of the propriety of the directed verdict, see *Helmuth* v. *Frame, supra,* decided this date.

The judgment is affirmed.

Peters, P. J., and Knight, J., concurred.

A petition for a rehearing was denied September 5, 1941, and appellant's petition for a hearing by the Supreme Court was denied October 2, 1941.