[Civ. No. 12449.   First Dist., Div. One.   Jan. 31, 1944.]

HENRIETTA LEPLAT, Respondent, v. RALEY WILES
AUTO SALES (a Corporation) et al., Defendants;
RALEY WILES, Appellant.

John J. Taheny for Appellant.

Philander B. Beadle and Samuel Vartan for Respondent.

KNIGHT, J.—The plaintiff, Henrietta Leplat, was struck and injured by an automobile as she was walking easterly across the northerly intersection of Post and Stockton Streets in San Francisco, about 2 o'clock in the afternoon. She

was walking in the pedestrian lane with the open traffic signal, but when about half way across Stockton Street she was knocked down by an automobile driven by the defendant Rosati. He had driven down Post Street, easterly, and was making a left turn up Stockton Street when he collided with plaintiff. He was driving alone at the time. On account of the injuries plaintiff received she brought this action for damages against Rosati as the driver of the car, and against the defendant Wiles as the owner, alleging that the proximate cause of the accident was the negligent operation of the car by Rosati and that he was using and operating the car with the express and implied permission of Wiles. The trial took place before a jury, and it returned a verdict in favor of plaintiff and against the defendant Rosati for $2,500, but found in favor of the defendant Wiles. Plaintiff moved for judgment against Wiles notwithstanding the verdict, and the motion was denied. Thereafter she moved for a new trial as to Wiles, and the motion was granted. Two appeals were taken. One was by plaintiff from the order denying her motion for judgment against Wiles notwithstanding the verdict; but on motion of Wiles the appeal was dismissed upon the ground that it had not been taken within the time allowed by statute. (*Leplat* v. *Wiles,* 60 Cal.App.2d 83 [140 P.2d 43].) The other appeal is the one now under consideration. It was taken by the defendant Wiles from the order granting a new trial as to him. The order specified insufficiency of the evidence as the ground therefor.

The complaint set forth two causes of action, but the record shows that to all intents and purposes the second has been abandoned. It differed from the first only in that it contained the additional allegation that appellant negligently permitted Rosati to drive the car knowing him to be an incompetent driver. The particular issue raised thereby was submitted to the jury in the form of a special verdict, and after the jury retired to deliberate respondent sought to dismiss the second cause of action, but the trial court properly ruled that it could not be dismissed at that stage of the case. Thereafter the jury found adversely to respondent on that particular issue, and she makes no contention on this appeal that the evidence did not justify the jury in so finding.

The first cause of action as against appellant is based on section 402 of the Vehicle Code, the pertinent provisions of

which declare that "Every owner of a motor vehicle is liable and responsible for the death of or injury to person or property resulting from negligence in the operation of such motor vehicle, in the business of such owner or otherwise, by any person using or operating the same with the permission, express or implied, of such owner . . ."; that the negligence of such person shall be imputed to the owner for all purposes of civil damages, which in case of death or injury to one person in any one accident, shall be limited to $5,000.

■ The car involved was sold by appellant, a dealer, to Rosati, under a conditional sales contract only a few hours prior to the accident; but up to the happening of the accident appellant had not complied with the requirements of section 177 and 178 of the Vehicle Code relating to the endorsement of the certificate of ownership and the giving of notice of transfer. It is undisputed, therefore, that for all purposes of this litigation he must be deemed to be the owner of the car at the time the accident occurred and as such subject to civil liability under section 402 for the permissive use of the car by another. (Secs. 177, 178, Veh. Code; *Bunch* v. *Kin,* 2 Cal.App.2d 81 [37 P.2d 744]; *Schmidt* v. *C.I.T. Corp.,* 14 Cal.App.2d 92 [57 P.2d 1016]; *Guillot* v. *Hagman,* 30 Cal.App.2d 582 [86 P.2d 865]; *Helmuth* v. *Frame,* 46 Cal. App.2d 372 [115 P.2d 846].) Furthermore, appellant does not question the negligence of Rosati in operating the car. This leaves for consideration the question of the sufficiency of the evidence relating to the issue of the permissive use or operation of the car.

■ One of the principal features of a conditional sales contract is that the vendee is entitled to the possession of the car which is the subject of the sale, and to use the same so long as he is not in default in payment (*Bunch* v. *Kin, supra*), and here the only restrictive clause in the contract as to the use of the car was that it should not be used "illegally" or "improperly." Therefore under the terms of the contract Rosati as conditional vendee was not only entitled to the possession of the car, but to use the same in the way in which such property is customarily used and for all reasonable purposes. (*Bunch* v. *Kin, supra; Pacific States Finance Corp.* v. *Freitas,* 113 Cal.App.Supp. 757 [295 P. 804].)

■ But neither at the time of the sales transaction nor at the time of the accident did Rosati hold an operator's license.

On the morning he purchased the car there was issued to him by the motor vehicle department a so-called instruction permit, under the terms of which he was entitled to operate a motor vehicle but only "when accompanied by and under the immediate supervision of a licensed operator or chauffeur." As above stated, at the time of the accident he was driving alone, and it is the contention of appellant that the undisputed evidence shows that at no time did he give Rosati permission to drive the car alone in violation of the instruction permit. Section 402 provides, however, as will be noted, that an owner is liable whether the permission be *express or implied*, and while in the present case it would appear that there is an absence of testimony showing express permission to take and drive the car alone on the particular occasion that resulted in the accident, it is apparent that the state of the evidence is such that it cannot be held as a matter of law, contrary to the inference drawn therefrom by the trial court, that when on this particular occasion Rosati took the car and drove it alone he did so without the *implied* permission of appellant.

The following are the essential facts: On the morning that Rosati purchased the car and before the sales transaction was completed he told appellant he did not have on operator's license. Appellant asked him if he could drive, and he said he could, but that he had not driven for about ten years; that some years back he held an operator's license, but it had expired. Thereupon appellant took Rosati in a car and let him drive around for an hour or more, to observe whether he was capable of handling a car, and appellant then drove him to the motor vehicle license bureau and left him there for the purpose of having him apply for a license. Appellant drove back to his sales room alone, and soon afterwards Rosati returned by street car and told appellant that he had been given a license. It appears from the record that although Rosati spoke broken English, he could read and write the English language; but he testified that he did not read the document that had been issued to him; that no one had informed him of the restriction therein about driving alone, and that he believed he had received an operator's license. He further testified, however, that he handed the document to appellant and that appellant read it. This was denied by appellant, but he stated that in view of what Rosati had

previously told him he assumed that the document that had been issued to Rosati was only an instruction permit, whereunder the holder was not entitled to drive alone. Accordingly, upon the consummation of the sales transaction, appellant declined to let Rosati take the car alone. He kept him waiting for about half an hour, at which time a Mr. McLaren dropped in. He was a friend of appellant's, and held an operator's license, and after holding a short conversation with appellant, McLaren, at appellant's request, got in the car with Rosati and they drove away together, McLaren doing the driving. They drove out to the beach where Rosati took over the operation of the car, drove around for about an hour, and then back down town and into a gasoline service station close to appellant's place of business. At the time they drove in appellant was standing in front of his place of business and saw them. McLaren then left Rosati at the station with the car, walked over to the place where appellant was standing, spoke to appellant and went away. Rosati waited at the service station until he had obtained a supply of gasoline, and then got in the car and drove away alone; but upon reaching Post and Stockton Streets he collided with respondent.

The testimony is conflicting, however, as to what was said and done following the signing of the contract. Rosati testified that at no time was he told by appellant or any one else that he should not drive alone, and that he did not know, nor was he told the reason he was required to wait for half an hour before he was permitted to take the car. Appellant admitted that at no time did he ever tell Rosati that he was not allowed to drive the car alone, but he claimed that upon completion of the contract he told him "that there should be a licensed driver with him, a licensed operator, some friend of his. . . ." There is also a conflict in the testimony as to what was said when McLaren arrived at the sales room and before he started out with Rosati. Appellant testified, but somewhat equivocally, that he told McLaren that Rosati had a qualified license that would permit him to drive only when accompanied by a licensed operator and that he should not let him drive alone, and he claimed that when he made that statement to McLaren Rosati was standing nearby. Rosati denied ever having heard the statement, and McLaren's testimony is decidedly contradictory to that given by appellant. He

testified that upon his arrival appellant asked him if he was doing anything for an hour or so, and if not would he "mind going out for an hour with this man in the car"; and that before consenting to do so he asked appellant whether the man had an operator's license, and appellant replied: "He has been all fixed up down at the motor vehicle department." Continuing, McLaren stated that he then got in the car with Rosati and they drove away; that after they had started out he asked Rosati if he "got the license and everything" and that Rosati said "yes," but that Rosati did not show him the paper and he assumed, therefore, that it was an operator's license.

Likewise there is a conflict in the testimony as to what happened after McLaren and Rosati drove into the gasoline station. McLaren testified that upon driving into the station he asked Rosati if he wanted him to accompany him home and that Rosati said "no, he thought he could get home by himself"; that at that time appellant was standing on the sidewalk in front of his place of business so he walked over there to speak to appellant, but that appellant was busy and the only thing he said to appellant was that Rosati "was doing all right"; that he, McLaren, then walked away, and had not gone far when he saw Rosati driving away alone. Rosati testified that after they had driven into the gasoline station appellant came over there and spoke to McLaren; that he asked McLaren "how it was going"; that McLaren replied "all right." Appellant denied having gone over to the gasoline station and McLaren testified that he "did not think" appellant had done so. Appellant admitted, however, that he had seen them drive into the station and that he afterwards asked McLaren how Rosati got along with his driving, and that McLaren replied he was doing "all right." Furthermore, there is evidence showing that appellant saw Rosati take the car at the service station and drive away alone. Therefore it was clearly within the discretionary power of the trial court, on motion for new trial, to exercise its own judgment in determining whether the acts of Rosati in so doing were with the implied permission of appellant; and since it appears that the testimony is conflicting, and there is substantial evidence to support the trial court's view, it is beyond the authority of this court, on appeal, to interfere with the exercise of such discretionary power. In other words, the situation presented in the

trial court was one of fact, wherein the law authorized the trial court to draw its own conclusion from the evidence, despite the inference drawn therefrom by the jury.

Appellant makes the additional point that in any event the trial court was without jurisdiction to entertain or grant the motion for new trial. This point is based upon the contention that the form of affidavit of service by mail of the notice of intention to move for a new trial was insufficient in that it did not set forth the residence address of the person mailing the notice. So far as the record shows, the sufficiency of the affidavit was in no way questioned in the trial court; moreover, no claim was ever made therein, nor is any made on this appeal, that counsel for appellant did not receive the copy of the notice in the due course of the mail. Quite to the contrary, it appears from the written order signed by the trial judge granting the new trial that the motion therefor came on "regularly for hearing." Assuming, however, that in that state of the record appellant may now for the first time challenge the sufficiency of the affidavit, there is no merit in the point.

Section 1012 of the Code of Civil Procedure provides: "Service by mail may be made *where the person on whom it is to be made resides or has his office at a place where there is a delivery service by mail, or* where the person making the service and the person on whom it is to be made reside or have their offices in different places between which there is a regular communication by mail." (Italics added.) The clause above italicized was added in 1931 by way of legislative amendment. It definitely appears from the affidavit herein, among other things, that all of the attorneys representing all of the parties maintained offices in San Francisco, and their names and office addresses are specifically set forth in the affidavit. The affidavit further shows that at the request of one of the attorneys for respondent the affiant mailed copies of the notice to the attorneys representing Rosati and appellant by enclosing the same in sealed envelopes with proper postage prepaid, addressed to said attorneys, naming them, at their offices in San Francisco; that the envelopes were deposited in the post office in San Francisco, and that there is a regular mail delivery in the city and county of San Francisco. The affidavit was therefore legally sufficient, under the 1931 amendment, to establish a valid service by

mail. (*Marsden* v. *Collins*, 23 Cal.App.2d 148 [72 P.2d 247].)

The case of *Carlon* v. *Gray*, 10 Cal.App.2d 658 [52 P.2d 966], cited and relied on by appellant, is not in point. There an attempt was made to serve a notice by mail upon one of the parties to the action. The envelope containing the copy of the notice was deposited in the post office at Sacramento, and was addressed to the party upon whom service was to be made "c/o The Carl Inn, Groveland, California." But there was nothing in the affidavit of mailing from which it appeared that the place to which the envelope was addressed was the residence or the place of business or the post office address of the person to whom the envelope was thus mailed. Obviously, therefore, the affidavit was insufficient proof of service under either clause of section 1012, and such was the basis of the decision in the case. That portion of the opinion rendered therein which is devoted to a review of some of the early cases involving section 1012 as it existed prior to the 1931 amendment, is not pertinent here for the reason that under the section as it then stood there could be no valid constructive service by mail on a person at a known place of residence unless the person serving and the person served resided at different places; consequently, in order to establish proof of valid service by mail under the section as it was thus limited, it was essential that the affidavit of mailing show that fact. But since the enactment of the 1931 amendment, valid service by mail may be made where the person serving and the person served reside or have their offices in the same place, provided there is a delivery service by mail. Therefore, as pointed out in *Marsden* v. *Collins, supra,* situations arising under the 1931 amendment are not subject to the rule of those early cases reviewed in *Carlon* v. *Gray,* *supra.*

The remaining question involved relates to the form of judgment that shall be rendered by this court in the disposal of the appeal. Respondent takes the position that the liability of appellant under section 402 was established as a matter of law; hence that the trial court erroneously denied her motion for judgment as against appellant notwithstanding the verdict in his favor; and she contends that under the provision embodied in the last sentence of section 629 of the Code of Civil Procedure she is now entitled to a judgment on this appeal reversing the trial court's order denying her

motion, with directions to the trial court to enter judgment on the merits in her favor and against appellant for the amount of the verdict returned against Rosati.

In contending that the evidence established appellant's liability as a matter of law respondent seeks to invoke the doctrine that where an owner gives another permission to use his car but imposes restrictions on the permittee either as to who shall drive it or how it shall be driven, the violation of those restrictions by the permittee does not destroy the effect of the permission, and accordingly does not relieve the owner of responsibility under section 402 for the permissive use of the car. In this connection respondent cites and relies particularly on the case of *Henrietta* v. *Evans,* 10 Cal.2d 526 [75 P.2d 1051], to which may be added the more recent cases of *Souza* v. *Corti,* 22 Cal.2d 454 [139 P.2d 645, 147 A.L.R. 861], and *Hobbs* v. *Transport Motor Co.,* 22 Cal. 2d 773 [141 P.2d 738]. On the other hand appellant, throughout this appeal, in support of his contention that the evidence established as a matter of law that he was not liable under section 402, seeks to invoke the doctrine that an owner is not liable where there has been a violation of restrictions imposed by him on the permittee as to the purpose for or the time within which the car was to be used, citing among other cases *Engstrom* v. *Auburn Auto. Sales Corp.,* 11 Cal.2d 64 [77 P.2d 1059]; *Henrietta* v. *Evans, supra; Di Rebaylio* v. *Herndon,* 6 Cal.App.2d 567 [44 P.2d 581]. He also cites *Howland* v. *Doyle,* 6 Cal.App.2d 311 [44 P.2d 453], but apparently there seems to be some doubt as to the soundness of the decision in that case. (See *Souza* v. *Corti, supra.*)

It is our conclusion, however, that for two reasons respondent is not entitled to the form of judgment she is here seeking. First, as above shown, the evidence is conflicting on the issue of permissive use. It follows, therefore, that the trial court quite properly denied her motion for judgment notwithstanding the verdict, and availed itself of its discretionary power in granting a new trial. Secondly, in the absence of a valid appeal from the order denying respondent's motion, this court is without legal authority to grant a judgment reversing the order, even though it believed the state of the evidence would so warrant. In other words the last sentence of section 629 of the Code of Civil Procedure must be construed in the light of the fixed rules governing

appeals; and it is well settled that when a particular order is made appealable by express provision of the statute (and this was such an order; see subd. 2, sec. 963, Code Civ. Proc.) a reviewing court may not reverse it for error unless the question of its invalidity is presented by a valid appeal therefrom. Here, as we have said, respondent took an appeal from the order she now seeks to have reversed, but the appeal was dismissed; and that being so, in no event may this court reverse the order and direct the entry of judgment in respondent's favor.

The order granting the motion for new trial as to appellant is affirmed.

Peters, P. J., and Ward, J., concurred.