Charles W. COUSINEAU, Plaintiff,

v.

UNITED STATES of America, Defendant, Third-Party Plaintiff and Appellee,

v.

AGRICULTURAL INSURANCE COMPANY, Third-Party Defendant and Appellant.

No. 71-2664.

United States Court of Appeals, Ninth Circuit.

Feb. 14, 1974.

Arthur Tuverson (argued), Burton, Blodgett, Halloran & Drapkin, Anaheim, Cal., David L. Jolliffe, Kinkle, Rodiger, Graf, Dewberry & Spriggs, Los Angeles, Cal., for appellant.

Philip S. Malinsky, Asst. U. S. Atty. (argued), William D. Keller, U. S. Atty., Frederick M. Brosio, Jr., Asst. U. S. Atty., Los Angeles, Cal., for appellee.

Before CHAMBERS and HUFSTEDLER, Circuit Judges, and TAYLOR,[*] District Judge.

## OPINION

FRED M. TAYLOR, District Judge:

Agricultural Insurance Company (Agricultural) issued a motor vehicle liability policy to Wesley B. Gibson, doing business as Continental Leasing Company as the named insured, from June 6, 1968 to June 6, 1969. A 1961 Plymouth automobile, owned by Gibson, was expressly included as one of the insured vehicles. The Plymouth was subsequently leased by Gibson to the United States Post Office for a period in excess of 30 consecutive days. In order to exempt the vehicle from licensing fees, it was registered with the California Department of Motor Vehicles in the name of the Post Office.

On July 13, 1968, a Post Office employee, driving the Plymouth in the course of his employment, became involved in an accident with the plaintiff, Charles Cousineau. Plaintiff Cousineau brought an action against the United States under the Federal Tort Claims Act. The defendant and third-party plaintiff, United States of America, filed a third-party complaint against the third-party defendant Agricultural Insurance Company seeking a judgment for any damages it might become obligated to pay to plaintiff, plus reasonable attorney's fees in defending plaintiff's action.

The plaintiff's action against the United States was compromised for $8,250.00 with the consent and approval of Agricultural and the matter went to trial on the third-party complaint. On April 9, 1971, the District Court entered a judgment in favor of the United States on its third-party complaint against Agricultural, and the insurance company appealed to this court from said judgment.

We believe the decision in this case is controlled by Metz v. Universal Underwriters Insurance Company, 10 Cal.3d 45, 109 Cal.Rptr. 698, 513 P.2d 922 (1973) and, accordingly, the judgment of the District Court is affirmed.

CHAMBERS, Circuit Judge (dissenting):

Agricultural Insurance Company (Agricultural) issued a motor vehicle liability policy to Wesley B. Gibson (Gibson), doing business as Continental Leasing Company, as the named insured from June 6, 1968, to June 6, 1969. A 1961 Plymouth owned by Gibson was expressly included as one of the insured vehicles. The Plymouth was subsequently leased by Gibson to the United States Post Office for a period in excess of 30 consecutive days. In order to exempt the vehicle from licensing fees, it was registered with the California Department of Motor Vehicles in the name of the Post Office.

On July 13, 1968, a post office employee driving the Plymouth in the course of his employment became involved in an accident with the plaintiff, Charles Cousineau. Plaintiff's suit against the United States was compromised for $8,250.00, with the consent and approval of Agricultural.

[*] Of the District of Idaho, sitting by designation.

The insurance contract insured the named insured "and any person or organization legally responsible for the use [of the automobile], provided the actual use of the automobile is . . . with the permission of either [the named insured or his spouse]." The United States, believing it was insured under this omnibus clause as a permissive user, requested Agricultural to defend it against plaintiff. When Agricultural refused, the United States filed a third party complaint for indemnity.

The issue presented is whether the omnibus clause of Gibson's insurance contract is operative for the purpose of insuring the United States as a permissive user of the Plymouth. The majority relies upon Metz v. Universal Underwriters Ins. Co., 10 Cal.3d 45, 109 Cal. Rptr. 698, 513 P.2d 922 (1973), to hold that the United States was insured. As demonstrated below, that reliance is misplaced for two reasons.

California Insurance Code, § 11580.1(d) prohibits the issuance of any automobile liability insurance policy unless it contains a clause insuring the named insured and, "to the same extent," insuring "any other person using or legally responsible for the use of said motor vehicles, provided the motor vehicles are being used by the named insured or with his permission, express or implied." When interpreting this statute and its predecessors, California courts have consistently held that insurance contract clauses excluding coverage for classes of permissive users are void as against public policy. See *Metz, supra*; Interinsurance Exchange of the Auto Club v. Ohio Cas. Ins. Co., 58 Cal.2d 142, 23 Cal. Rptr. 592, 373 P.2d 640 (1962); Wildman v. Government Employees' Ins. Co., 48 Cal.2d 31, 307 P.2d 359 (1957); Bohrn v. State Farm Mut. Auto. Ins. Co., 226 Cal.App.2d 497, 38 Cal.Rptr. 77 (1964). For this reason, the United States argues that its exclusion from coverage under Gibson's policy would violate the public policy of California.

The bounds of § 11580.1(d), however, are not without limitation. In Uber v. Ohio Cas. Ins. Co., 247 Cal.App.2d 611, 617, 55 Cal.Rptr. 720, 724 (1967), the California Court of Appeal interpreted this statutory requirement thusly:

"The elements of ownership and permission essential to coverage under an omnibus clause have been specialized by case law. *The ownership of the offending automobile by the named insured must be that which subjects him to liability under Vehicle Code § 17150.* . . . The rules prescribing these specialized types of ownership and permission are the product of court decisions effectuating the purpose of the statutes imposing liability incident to ownership and requiring omnibus insurance coverage." (Emphasis added.)

The element of ownership is the first point that distinguishes the present case from *Metz, supra*. The party seeking recovery from a person who was not operating the vehicle has the burden of proving that the person was the owner of the vehicle at the time of the accident. Scollan v. Government Employees' Ins. Co., 222 Cal.App.2d 181, 184, 35 Cal.Rptr. 40, 41–42 (1963); Vallejo v. Montebello Sewer Co., 209 Cal. App.2d 721, 732, 26 Cal.Rptr. 447, 454 (1962). In *Metz* the trial court had specifically found that the named insured was the owner of the vehicle for purposes of imposing liability.[1] The Supreme Court of California simply adopted that finding. *Metz, supra*, 10 Cal.3d at 49, 109 Cal.Rptr. at 700, 513 P.2d at 924. The district court made no such finding in this case. Nowhere in the findings of fact or conclusions of law is there any indication of who owned the vehicle at the time of the accident. If the district court's decision is to be affirmed, therefore, this court must be

---

1. Reserve Ins. Co. v. Universal Underwriters Ins. Co., 13 Cal.App.3d 656, 92 Cal.Rptr. 137, 142 n. 3 (1970), vacated; Metz v. Universal Underwriters Ins. Co., 106 Cal.Rptr. 779 (1973), vacated, 10 Cal.3d 45, 109 Cal. Rptr. 698, 513 P.2d 922 (1973). The vacated opinions are, of course, of no legal precedence.

able to determine, from the record before it, that Gibson's ownership of the vehicle, at the time of the accident, was such that he was subject to liability under § 17150. The record will not support such a finding.

Section 17150 simply states that "[e]very owner of a motor vehicle" is liable for the negligent misuse of his motor vehicle by permissive users. "No portion thereof deals with the meaning or definition of the word 'owner'. . . . " Borjesson v. Simpson, 177 Cal.App.2d 365, 368 n.1, 2 Cal.Rptr. 366, 367 n.1 (1960). Among the definitions applicable to the Vehicle Code, though, are those contained in §§ 370, 460 and 505 of the Vehicle Code, defining "Legal Owner," "Owner" and "Registered Owner," respectively. A "legal owner" is a person holding a security interest in the vehicle "or the lessor of a vehicle to [a state political entity] or to the United States, under a lease . . . which grants possession of the vehicle to the lessee for a period of 30 consecutive days or more." Vehicle Code § 370. An "owner" is a "person having all the incidents of ownership, including the legal title of a vehicle whether or not such person . . . rents . . . the vehicle; . . . or [a state political entity] or the United States, when entitled to the possession and use of a vehicle under a lease . . . for a period of 30 consecutive days or more." Vehicle Code § 460. "A 'registered owner' is a person registered by the department as the owner of a vehicle." Vehicle Code § 505.

In this case, Gibson is the "legal owner" of the Plymouth, while the United States is both the "owner" and "registered owner." The question to be an-

swered is whether Gibson's mere legal ownership is sufficient to subject him to liability under § 17150.

Numerous California cases have stated that the term "owner" as used in § 17150 generally refers to the registered owner. Travis v. Southern Pacific Co., 210 Cal.App.2d 410, 431, 26 Cal.Rptr. 700, 712 (1963); Irvine v. Wilson, 137 Cal.App.2d 843, 848, 289 P.2d 895, 898 (1955); Helmuth v. Frame, 46 Cal.App. 2d 372, 377, 115 P.2d 846, 850 (1941); Collard v. Love, 17 Cal.App.2d 72, 73, 61 P.2d 453, 459 (1936); Bunch v. Kin, 2 Cal.App.2d 81, 85, 37 P.2d 744, 746 (1935). Another line of cases has stated that the "actual owner" or "true owner is responsible whether he was the registered owner or not." McClary v. Concord Ave. Motors, 202 Cal.App.2d 564, 566, 21 Cal.Rptr. 1, 2 (1962). See Stoddart v. Peirce, 53 Cal.2d 105, 115, 346 P.2d 774, 779 (1959); Rody v. Winn, 162 Cal.App.2d 35, 39, 327 P.2d 579, 581 (1958); Logan v. Serpa, 91 Cal.App.2d 818, 822, 206 P.2d 70, 72 (1949); McCalla v. Grosse, 42 Cal.App.2d 546, 549, 109 P.2d 358, 360 (1941). In each case where a California court has found that a nonregistered owner was or might be proven to be the actual or true owner, however, the court has also found that the person was or was alleged to have been exercising acts of dominion and control over the vehicle customarily exercised by actual owners: i. e., at the time of the accident, each party had the incidents of ownership referred to in Vehicle Code § 460.[2] Rody v. Winn, supra, 162 Cal.App.2d at 38, 327 P.2d at 581; Logan v. Serpa, supra, 91 Cal. App.2d at 822–823, 206 P.2d at 73; Nash v. Wright, 82 Cal.App.2d 467, 473, 186 P.2d 686, 690 (1947); McCalla v.

2. In addition to relying upon the trial court's finding that the lessor in Metz, supra, was the owner of the vehicle for purposes of liability, the California Court of Appeal found that the lessor had retained numerous incidents of ownership, including various restrictions upon the lessee in regard to the manner of use of the vehicle, the right to immediate possession under certain circumstances, the right to approve insurance obtained by the lessee and the requirement that the insurance protect the lessor. Reserve Ins. Co. v. Universal Underwriters Ins. Co., 13 Cal.App.3d 656, 92 Cal.Rptr. 137, 142 (1970), vacated; Metz v. Universal Underwriters Ins. Co., 106 Cal.Rptr. 779 (1973), vacated, 10 Cal.3d 45, 109 Cal.Rptr. 698, 513 P.2d 922 (1973). According to Vehicle Code § 460, the lessor in Metz was also defined as the "owner" of the vehicle.

Grosse, *supra*, 42 Cal.App.2d at 549, 109 P.2d at 360; Walker v. Nelson, 11 Cal. App.2d 297, 301, 53 P.2d 977, 978 (1936). Here no such facts have been established in regard to Gibson.[3]

There has been no California case allowing recovery against a person whose only connection with the vehicle was that of "legal owner" as defined in Vehicle Code § 370.[4] There are two reasons. First, California Vehicle Code § 17156 states, in effect, that those who are mere legal owners by reason of a security interest shall not be deemed an owner for purposes of imposing liability.[5] See Oppenheimer v. Gordon, 141 Cal.App.2d 833, 297 P.2d 808 (1956).[6] Second, no reported case has involved a party who was a mere legal owner by virtue of leasing a vehicle to the government.

The decision to be made is whether the California legislature intended to grant immunity to those leasing vehicles to the government when the legislature chose to group such lessors with legal owners holding security interests and then to grant immunity to the latter. Klein v. Leatherman, 270 Cal.App.2d 792, 76 Cal.Rptr. 190 (1969), gives good cause to believe that immunity for the former group was intended. There the court held that the lessor in a vehicle lease whereby the lessee agreed to pay a sum substantially equivalent to the value of the vehicle and had the option of purchasing the vehicle for nominal consideration was not liable as the owner for injuries inflicted by the lessee's employee. In the court's opinion, the lease was equivalent to a conditional sale and the lessor should, therefore, be granted the same immunity as a conditional vendor under § 17156. If immunity is to be granted upon the court's finding that certain lessors are tantamount to conditional sellers, then certainly immunity must be granted upon the legislature's determination that other lessors are tantamount to mortgagees, who are also granted immunity under § 17156.

The second major distinction between *Metz, supra,* and the present case is that, unlike *Metz,* here excluding the

3. The only rights held by Gibson were the rights to repossession of the vehicle at the expiration of the lease and the right to terminate the lease after the first six months upon thirty days' notice. Since the accident occurred on July 13, 1968, Gibson had neither right at the time of the accident. Nor did Gibson have any of the incidents of ownership found in the *Metz* decision, *supra*. See footnote 2, *supra*.

4. Appellee has been unable to cite, and I have been unable to find any California case holding a "legal owner" liable for use of a vehicle when his only connection with the vehicle is that he holds legal title (such as to qualify as a legal owner under § 370 or otherwise). The attitude of the California Supreme Court in regard to "legal owners" was fairly summarized in Stoddart v. Peirce, *supra*, 53 Cal.2d at 115, 346 P.2d at 779: "There is no doubt that the word 'owner' as used in section 402 [now § 17150] for the purpose of creating a liability thereunder, is not synonymous with that word as used in the ordinary sense of referring to a person or persons whose title is good as against all others."

5. California Vehicle Code § 17156 (West 1971) provides: "If a motor vehicle is sold under a contract of conditional sale whereby the title to such motor vehicle remains in the vendor, such vendor or his assignee shall not be deemed an owner within the provisions of this chapter, but the vendee or his assignee shall be deemed the owner notwithstanding the terms of such contract until the vendor or his assignee retakes possession of the motor vehicle. A chattel mortgagee of a motor vehicle out of possession is not an owner within the provisions of this chapter." It should be noted that "legal owners," who have become such by virtue of conditional sales, have been held liable when they have failed to comply with the notice and registration requirements which are prerequisites to the immunity granted in § 17156. *See, e. g.,* Dorsey v. Barba, 38 Cal.2d 350, 240 P.2d 604 (1952); Rosenthal v. Harris Motor Co., 118 Cal.App.2d 403, 257 P.2d 1034 (1953); Leplat v. Raley Wiles Auto Sales, 62 Cal. App.2d 628, 145 P.2d 350 (1944). Since the effect of the failure to comply with the registration requisites meant that the "legal owners" were also the "registered owners," those cases fall within the rule that registered owners are liable under § 17150.

6. Oppenheimer v. Gordon, *supra*, strongly suggests that mere legal owners, as defined under § 370 or otherwise, are not liable under § 17150.

United States from coverage is completely consistent with the policies of the California courts in interpreting Insurance Code § 11580.1(d) and Vehicle Code § 17150.

Although no actual negligence need be shown on the part of the owner, "the liability which [§ 17150] imposes upon the owner of a motor vehicle is predicated upon a theory of imputed negligence in cases where the principle of respondeat superior is inapplicable." Glens Falls Ins. Co. v. Consolidated Freightways, 242 Cal.App.2d 774, 778, 51 Cal.Rptr. 789, 792 (1966). Burgess v. Cahill, 26 Cal.2d 320, 323, 158 P.2d 393, 394 (1945). Surely the government does not seriously argue that the negligence of the United States Government ought to be imputed to private citizens. Moreover, since § 17150 creates a liability unknown at common law, it is to be strictly construed in favor of the person sought to be held liable. Exchange Cas. & Sur. Co. v. Scott, 56 Cal.2d 613, 619, 15 Cal.Rptr. 897, 900, 364 P.2d 833, 836 (1961); Heves v. Kershaw, 198 Cal. App.2d 340, 346, 17 Cal.Rptr. 837, 840 (1962).

Nor does excluding the United States from coverage violate the policies followed in interpreting § 11580.1(d). As stated by the Supreme Court of California in Wildman v. Government Employees' Ins. Co., supra, 48 Cal.2d at 39, 307 P.2d at 364, "The substantive law of [California] cannot be enlarged, circumvented, defeated, or modified by any provision which the insurer may have elected to place in its contract in derogation of or in conflict therewith." The exclusion in this case results not from any action by the insurer but from the substantive law of California itself. More importantly, because the exclusion is limited to those situations involving the leasing of vehicles to the state or federal government, both of which are financially responsible, the exclusion is of no impediment to § 11580.1's "main objective of giving 'monetary protection to that ever changing and tragically large group of persons who while lawfully using the highways themselves suffer grave injury through the negligent use of those highways by others.'" Metz, supra, 10 Cal. 3d at 53, 109 Cal.Rptr. at 703, 513 P.2d at 927, quoting Interinsurance Exchange of the Auto. Club v. Ohio Cas. Ins. Co., supra, 58 Cal.2d at 153, 23 Cal.Rptr. at 598, 373 P.2d at 646.