219 Cal.App.3d 1598 (1990)
269 Cal. Rptr. 68
Estate of PHILLIP GONZALEZ, Deceased.
DIANA MEDRANO, as Adminstratrix, etc., Plaintiff and Appellant,
v.
JAMES HOHENSHELT, Defendant and Respondent.
Docket No. H005313.
Court of Appeals of California, Sixth District.
May 4, 1990.
*1599 COUNSEL
Patrick K. Tillman for Plaintiff and Appellant.
Karen M. Platt, Timothy E. Herr and Collins & Zapala for Defendant and Respondent.
OPINION
COTTLE, J.
Plaintiff Diana Medrano, administratrix of the estate of Phillip Gonzalez, appeals from a judgment entered after the court granted the motion of defendant, James Hohenshelt, doing business as JMK Enterprises *1600 (JMK) for summary judgment.[1] The court determined that the lease agreement which JMK entered into with defendant Christopher Allen was a conditional sales agreement and that consequently JMK was not liable for any negligence on the part of Allen, driver of the leased vehicle. For reasons we shall explain, we conclude that the document was not a conditional sales agreement and, accordingly, we shall reverse the judgment.

FACTS
This action arises out of a traffic accident which occurred on June 28, 1985, at the intersection of Winchester Boulevard and San Tomas Expressway in the county of Santa Clara. Defendant Christopher Allen, who was driving a 1984 Jeep, rear ended a car driven by 70-year-old Phillip Gonzalez and then fled from the scene. Allen was later arrested and booked on charges of driving under the influence of alcohol or drugs (Veh. Code, § 23153, subd. (a))[2] and fleeing the scene (§ 20001). Gonzalez was admitted to Good Samaritan Hospital, complaining of neck and back injuries, and was released six days later. He died of apparent heart failure on August 13, 1985.
The 1984 Jeep had originally been leased by defendant JMK to Allen's friend, Barry Chandler. When Chandler entered into a new lease with JMK on a different car, he suggested to Allen that Allen take over the lease on the Jeep. On December 11, 1984, Allen executed a lease agreement with JMK, and agreed to "pay ... 29 monthly lease payments of $215 each for a total of monthly lease payments of $6,235." In the 12-page agreement, the parties agreed that the "total initial value" of the Jeep, which had 9,255 miles on it, was $8,295.86, that the lessee was responsible for damage to the vehicle, that its use would be restricted as set forth in the agreement, that lessee was required to maintain liability insurance, and that ownership of the vehicle would remain with the lessor.[3] At the conclusion of the lease period, Allen was given the option to purchase the vehicle for the greater of the initial value of the vehicle less amounts credited to it or 85 percent of the vehicle's Kelly Blue Book wholesale value, which was estimated at $4,400, plus any official fees and taxes imposed in connection with the exercise of the option.
*1601 At the time of the hit-and-run accident, twenty-year-old Allen was uninsured and allegedly had a history of driving dangerously (eight traffic violations and two suspensions of his driving privilege).[4] Before leasing the car to Allen, JMK verified that he had a valid driver's license.
On April 10, 1986, Diana Medrano, as administratrix of the estate of Phillip Gonzalez (estate), filed a complaint in the Santa Clara County Superior Court against Allen and JMK, seeking damages for personal injuries and property damage. (Action No. 599652.) Four months later, Diana Medrano and other heirs of Phillip Gonzalez (heirs) filed a second complaint against the same defendants in which they sought damages for wrongful death, personal injury, and property damage. (Action No. 609226.) The two actions were consolidated on February 9, 1987.
On May 3, 1988, JMK filed a motion for summary judgment or, in the alternative, for summary adjudication of issues on all causes of action against it in the two lawsuits. After plaintiff moved for additional time to conduct further discovery (Code Civ. Proc., § 437c, subd. (h)), the motion was denied. On August 31, 1988, JMK filed a second motion for summary judgment/summary adjudication, and defendant Allen joined in the motion with respect to the wrongful death cause of action.
On October 19, 1988, the court issued its order stating that "The motion of defendant [JMK] for summary judgment is granted in cases No. 599652 and 609226. [¶] The motion is granted as to Defendant Allen in the wrongful death case (609226) and denied in the personal injury case (599652)." Judgment was entered on October 31, 1988.
On December 28, 1988, "plaintiff, PHILLIP GONZALEZ, by and through DIANA MEDRANO, Administrator to the Estate of PHILLIP GONZALEZ," filed a notice of appeal "from the judgment entered by the court November 1, 1988 [sic] in favor of defendant and against plaintiff PHILLIP GONZALE[Z], by and through DIANA MEDRANO, Administrator to the Estate of PHILLIP GONZALEZ, and from the whole thereof."

DISCUSSION
(1) It is well settled that where, as here, there is a judgment resolving all issues between a plaintiff and one defendant, then either party may appeal from an adverse judgment, even though the action remains pending between the plaintiff and other defendants. (Code Civ. Proc., § 579; Justus v. Atchison *1602 (1977) 19 Cal.3d 564, 568 [139 Cal. Rptr. 97, 565 P.2d 122], disapproved on another ground in Ochoa v. Superior Court 39 Cal.3d 159, 171 [216 Cal. Rptr. 661, 703 P.2d 1]; Tinsley v. Palo Alto Unified School District (1979) 91 Cal. App.3d 871, 880 [154 Cal. Rptr. 591].) Therefore, the fact that plaintiff's survival action remains pending between plaintiff and Allen does not preclude this court from addressing the merits of the appeal.
(2) The estate's sole contention on appeal is that the court erred in determining as a matter of law that the lease agreement between defendant Allen and defendant JMK was a conditional sales agreement. We agree. The significance of the distinction is that the liability which Vehicle Code section 17150 imposes upon the owner of a motor vehicle[5] does not attach where the owner has sold the car under a conditional sales agreement. Section 17156 provides: "If a motor vehicle is sold under a contract of conditional sale whereby the title to such motor vehicle remains in the vendor, such vendor or his assignee shall not be deemed an owner within the provisions of this chapter, but the vendee or his assignee shall be deemed the owner notwithstanding the terms of such contract...."
The issue, therefore, is whether the lease agreement entered into between Allen and JMK is a conditional sales agreement. The latter is defined in Civil Code section 2981, subdivision (a)(2) as "Any contract for the bailment of a motor vehicle between a buyer and a seller, ... by which the bailee or lessee [1] agrees to pay as compensation for use a sum substantially equivalent to or in excess of the aggregate value of the vehicle... at the time the contract is executed, and [2] by which it is agreed that the bailee or lessee will become, or for no other or nominal consideration has the option of becoming, the owner of the vehicle upon full compliance with the terms of the contract." (Italics added.)
JMK argued below, and the trial court agreed, that the case of Klein v. Leatherman (1969) 270 Cal. App.2d 792 [76 Cal. Rptr. 190] was dispositive of the issue of whether the Allen-JMK "lease" was a conditional sales agreement. In Klein, the parties entered into two contemporaneous agreements, one a typical conditional sales agreement and the other entitled a lease agreement, "whereby at the end of the term upon a payment of one dollar, title could pass." (Id., at pp. 793-794.) After observing that "the injunction of Civil Code section 1642" provided that "written instruments were to be considered together," the court concluded that the lease before it was a conditional sales contract. It pointed out that, "[b]y definition, a lease *1603 in which the bailee or lessee agrees to pay as compensation a sum substantially equivalent to the value of the property and is bound to become, or has the option of becoming the owner of the property, is a conditional sale. (Civ. Code, § 2981....)" (Id., at p. 794.)
In the instant case, in contrast, the lease agreement stands alone and does not satisfy either of the prongs set forth in Civil Code section 2981, subdivision (a)(2), defining a conditional sales agreement. At the time the contract was entered into, Allen agreed to pay 29 payments of $215, for a total of $6,235. This was not an amount "substantially equivalent to or in excess of the aggregate value of the vehicle," which the parties agreed was $8,295.86. Thus the lease agreement fails the first prong of the statutory definition. The second prong provides that the lessee "will become, or for no other or nominal consideration has the option of becoming, the owner of the vehicle." (Italics added.) In Klein the final consideration was one dollar. In the instant case, the anticipated payoff amount was 85 percent of $4,400, almost half of the agreed value of the car. Under no circumstances can this be considered "no" consideration or "nominal" consideration.
In addition to relying on Klein, JMK relies on Circuit Judge Chamber's dissent in Cousineau v. United States (9th Cir.1974) 493 F.2d 692 for the proposition that where nonregistered owners have been found liable under section 17150, "the court has also found that the person was or was alleged to have been exercising acts of dominion and control over the vehicle...." (Id., at p. 695.) The dissent distinguished the case before it from others where California courts had found "the lessor had retained numerous incidents of ownership, including various restrictions upon the lessee in regard to the manner of use of the vehicle, the right to immediate possession under certain circumstances, the right to approve insurance obtained by the lessee and the requirement that the insurance protect the lessor." (Id., at p. 695, fn. 2.) In the instant case, JMK retained all of the enumerated incidents of ownership in its 12-page lease agreement with Allen.
We therefore conclude that the agreement with Allen was not a conditional sale and that consequently JMK is liable for any negligent misuse of its vehicle by Allen. Whether JMK negligently entrusted the vehicle to Allen, which it contends it did not, is irrelevant to its liability under section 17150. "[N]o actual negligence need be shown on the part of the owner...." (Cousineau v. United States, supra, 493 F.2d at p. 697.) Rather, "the liability which [§ 17150] imposes upon the owner of a motor vehicle is predicated upon a theory of imputed negligence in cases where the principle *1604 of respondeat superior is inapplicable." (Glen Falls Ins Co. v. Consolidated Freightways (1966) 242 Cal. App.2d 774, 778 [51 Cal. Rptr. 789].)[6]
The judgment is reversed. Costs on appeal to appellant.
Premo, Acting P.J., and Elia, J., concurred.
NOTES
[1] Judgment was granted in favor of JMK in both of two consolidated actions, the first seeking damages for personal injury and property damage (No. 599652), the second seeking damages for wrongful death (No. 609226). Defendant contends this appeal applies only to the first action and not to the wrongful death action. We agree. Although the notice of appeal might be construed as applicable to both actions, plaintiff makes no such claim. Instead, plaintiff's opening and reply briefs fail to discuss the judgment as it relates to the wrongful death cause of action.
[2] All further statutory references are to the Vehicle Code unless otherwise stated.
[3] Paragraph 18 provided, in pertinent part: "I understand that this is a lease, that I have and will acquire no ownership interests in the vehicle unless I exercise the purchase option given me in Item 11 and that until I may exercise the option my rights are limited to the possession and use of the vehicle while I keep my promises under this lease...."
[4] The Department of Motor Vehicles printout of Allen's driving record of which plaintiff refers is not included in the record on appeal.
[5] Section 17150 provides: "Every owner of a motor vehicle is liable and responsible for death or injury to person or property resulting from a negligent or wrongful act or omission in the operation of the motor vehicle, in the business of the owner or otherwise, by any person using or operating the same with the permission, express or implied, of the owner."
[6] At oral argument, JMK asserted for the first time that the ownership issue was irrelevant in that plaintiff's only cause of action against it in the survival action was for negligent entrustment. We disagree. The elements of a cause of action for violation of the statutory duty imposed by section 17150 are "[p]roof of ownership of the car and that it was being used at the time of the accident under permission of the owner...." (DuBois v. Owen (1936) 16 Cal. App.2d 552, 556 [60 P.2d 1019].) Plaintiff estate alleges these elements in its complaint, i.e., that at the time of the accident in question, the vehicle was being driven by lessee Allen with JMK's permission.