[L. A. No. 25886. In Bank. Sept. 18, 1961.]

EXCHANGE CASUALTY AND SURETY COMPANY, Plaintiff and Respondent, v. JAMES L. SCOTT, Defendant and Respondent; HAROLD LEE GARMON, Cross-complainant and Respondent; STANDARD ACCIDENT INSURANCE COMPANY et al., Cross-defendants and Appellants.

Gilbert, Thompson & Kelly and Jean Wunderlich for Cross-defendants and Appellants.

Sanford I. Carter and Gerson Marks for Cross-complainant and Respondent.

WHITE, J.—This is an appeal by Standard Accident Insurance Company (hereinafter referred to as Standard), and its insured, O. N. Sebastian, from a declaratory judgment which determined that Standard is primarily liable for the payment of a judgment for personal injuries which judgment was obtained by Harold Lee Garmon against James L. Scott, who was the operator of an automobile owned by Sebastian and which caused the above injuries to Garmon.

The principal contention by Standard is that it may not be adjudged in the instant action that Scott was operating Sebastian's automobile with that owner's permission, so as to become an "additional insured" under the omnibus coverage clause in the policy it issued to Sebastian, since it has already been adjudicated that Scott was not operating the Sebastian automobile at the time and place of the accident with Sebas-

tian's permission within the meaning of Vehicle Code, then section 402.

On April 11, 1957, Sebastian drove his automobile onto the premises of Quick Way Car Wash (hereinafter referred to as Quick Way), in Inglewood. He drove up to the point where the driving chain is hooked onto the cars, alighted leaving his keys in the car, and paid the attendant. He spoke to no one, and immediately left the premises.

When the Sebastian automobile reached the end of the washing process, it was driven by Scott, an employee of Quick Way, away from the end of the washing machinery. Garmon, also a Quick Way employee, was inside an enclosure on the premises polishing another automobile a short distance from the end of the washing machine. Scott drove Sebastian's car into the automobile on which Garmon was working, pinning Garmon against the wall of the enclosure and thereby injuring him.

Garmon brought an action against Scott as the operator, and against Sebastian as the owner of the automobile. Sebastian's alleged liability was predicated exclusively on the provisions of Vehicle Code, then section 402, which made the owner responsible for the negligence of persons operating his vehicle with the owner's express or implied permission.[1] Garmon obtained a judgment for $17,500 against Scott based on the latter's negligence, but judgment was in favor of the owner Sebastian. Scott did not appeal, but Garmon appealed from the judgment in favor of Sebastian, contending that as a matter of law the evidence established Sebastian's liability for Scott's negligence under Vehicle Code, section 402. The judgment was affirmed. (*Garmon* v. *Sebastian*, 181 Cal.App. 2d 254 [5 Cal.Rptr. 101].)

In the case just cited the District Court of Appeal held that: "Under the evidence in this case the jury was not bound to find that . . . [Sebastian] had reason to anticipate that his car would be moved near the polishing enclosure. . . . We cannot say that there was not substantial support in the evidence for the implied finding of the jury that the permission

---

[1]Vehicle Code, section 402, provided: "(a) Every owner of a motor vehicle is liable and responsible for the death of or injury to person or property resulting from negligence in the operation of such motor vehicle, in the business of such owner or otherwise, by any person using or operating the same with the permission, express or implied, of such owner, and the negligence of such person shall be imputed to the owner for all purposes of civil damages." The provisions as to such liability are now found in sections 17150-17157 of the Vehicle Code of 1959.

given by . . . [Sebastian] did not embrace driving the automobile to a point away from the usual place of parking cars freshly washed but that such permission was limited to such usual movement.'' (*Garmon* v. *Sebastian, supra,* 181 Cal. App.2d 254, 260.)

The present action for declaratory relief was instituted by Exchange Casualty and Surety Company (hereinafter referred to as Exchange), Scott's insurer, against Scott, Garmon, and Sebastian. Exchange alleged that because of certain exemptions in the automobile liability policy which it issued to Scott, Exchange was not responsible for that driver's liability to Garmon. Garmon filed a cross-complaint against Scott, Exchange, Sebastian, and Standard, which alleged that Scott was an additional insured under the terms of the policy which Standard issued to Sebastian. Garmon's theory was that Scott was operating the automobile with Sebastian's implied permission within the meaning of Standard's insurance contract with Sebastian, so that Standard was liable for Garmon's judgment against Scott.[2] The policy which Standard issued to Sebastian provided under ''Definition of Insured,'' that: ''. . . the unqualified word 'insured' includes the named insured [Sebastian] and, . . . any person while using the automobile . . . provided the actual use of the automobile is . . . with the permission of . . . [Sebastian or his spouse].''

Standard as a cross-defendant contended that Scott was not operating the automobile with Sebastian's permission, and that the issue of permission had been adjudicated in Sebastian's and thus in Standard's favor in the prior action. Standard asserted the further defense that it was exempt from liability for Garmon's judgment against Scott because its policy did not provide coverage for accidents arising out of the operation of an automobile sales agency, repair shop, service station, storage garage, or public parking place, and which occurred while the Sebastian automobile was being operated by any employee of such establishments. Standard claimed that Quick Way was in the nature of a service station or public parking place, and that therefore the employee Scott was not covered at the time and place of the accident. These contentions present the basic issues in this case.

In support of the finding that Scott drove with Sebastian's

---

[2]Garmon's cross-complaint against Standard was filed pursuant to the provisions of Insurance Code, section 11580, subdivision (b) (2), providing for a claimant's direct action against an insurance carrier after the claimant has secured a final judgment against an insured.

permission was the following testimony on the cross-examination of Sebastian: "Q: Mr. Sebastian, did you ever instruct anyone at the car wash not to drive your car while it was at the car wash? A: No. Q: Did you ever instruct anyone at the car wash where your car could be driven on the premises of the car wash? A: No. Q: When you drove your car up there on this particular day, the day of the accident, did you place any restrictions on the movement or use of your car? A: No."

The trial court expressly found "that defendant Scott, at the time and place of said accident of April 11, 1957, was driving the automobile of the defendant Sebastian with the latter's permission within the meaning of the terms of the liability insurance policy which had been issued and sold by cross-defendant [Standard] . . . to defendant Sebastian, and which policy was in full force and effect on April 11, 1957." The evidence furnishes substantial support for this finding. The court also found that "Quick Way Car Wash is not an automobile sales agency, repair shop, service station, storage garage, or public parking place," within the meaning of the above-mentioned exclusionary clause in Standard's policy.

In his memorandum opinion, the trial judge observed: "It is common knowledge that after a vehicle is washed it is usually driven to a different place upon the premises for the completion of the operation and that thereafter, if the owner is not present to take immediate delivery of the car, it is driven to some place upon the premises to be parked. In the light of this, it must be assumed that one who entrusts his automobile to an auto-wash thereby manifests his consent to the operation of his automobile by the employees thereof within the premises and for a purpose reasonably related to that for which it is entrusted to them." The trial court also observed: "The issues in the two actions are not the same in that in the former action liability as against the defendant Sebastian as owner of the automobile was predicated upon the provisions of then section 402 of the Vehicle Code, wherein the liability here asserted against Standard as Sebastian's insurance carrier is predicated upon the provisions of its policy." The court concluded that the former judgment was not res judicata on the issue of permission and that Scott was an "additional insured" within the meaning of Standard's policy.

Judgment was entered in favor of Garmon against Exchange and against Standard, for the payment of Garmon's prior judgment against Scott. But because of the operation of Ex-

change's "other insurance" clause, Standard's liability was deemed to be primary, and Exchange's liability to be excess. Exchange did not appeal.

Standard now contends on appeal, in addition to the contentions heretofore set out, that as Sebastian's indemnitor it is favorably bound by the prior judgment in favor of Sebastian, and that the prior adjudication precludes Garmon's instant suit against Standard because of the operation of the doctrine of collateral estoppel. But if the question of Sebastian's permission within the context of Vehicle Code, section 402, for Scott to operate his automobile is a different question from that of Sebastian's permission for Scott's operation within the context of the liability insurance policy issued to Sebastian, then Standard may not rely upon the prior adjudication by invoking the doctrine of collateral estoppel as to the instant issues. (See *Norris* v. *Pacific Indemnity Co.,* 39 Cal.2d 420, 424 [247 P.2d 1] ; *Osborne* v. *Security Ins. Co.,* 155 Cal.App.2d 201, 208-210 [318 P.2d 94] ; *cf. Harbor Ins. Co.* v. *Paulson,* 135 Cal.App.2d 22, 29-30 [286 P.2d 870].)

■■■ In that connection the prior action against Sebastian was based solely upon his imputed statutory liability as an owner under Vehicle Code, section 402, which section must be construed in a manner not favoring imposition of liability on the otherwise nonnegligent owner. (*Weber* v. *Pinyan,* 9 Cal. 2d 226, 229-230 [70 P.2d 183, 112 A.L.R. 407] ; *Jones* v. *Allen,* 185 Cal.App.2d 278, 281-282 [8 Cal.Rptr. 316].) ■ The present action by Garmon against Standard is founded exclusively on the claim that Scott is an additional insured within the terms of an insurance contract issued by Standard, and it is well established that uncertainties in such contracts must be construed in favor of imposing liability on the insurer. (*Arenson* v. *National Auto. & Cas. Ins. Co.,* 48 Cal.2d 528, 539 [310 P.2d 961] ; *Osborne* v. *Security Ins. Co., supra,* 155 Cal. App.2d 201, 207; *Ritchie* v. *Anchor Casualty Co.,* 135 Cal. App.2d 245, 257 [286 P.2d 1000].) ■ Specifically, uncertainties created by the language of the contract as to the persons protected are to be construed in favor of imposing liability on the insurer (*Continental Cas. Co.* v. *Phoenix Constr. Co.,* 46 Cal.2d 423, 437-438 [296 P.2d 801, 57 A.L.R.2d 914]), and as the injured third party, Garmon may take advantage of the rules of strict construction applicable against Standard. (*Harbor Ins. Co.* v. *Paulson, supra,* 135 Cal.App. 2d 22, 26; *Sly* v, *American Indemnity Co.,* 127 Cal.App. 202,

207-208 [15 P.2d 522].) ▉ It is thus manifest that even though the evidence as to Scott's permitted operation of the Sebastian automobile may have been similar in the prior and in the instant action, the issue of permission to be decided in each proceeding was different because of the operation of the opposing modes of construction applicable to the imputed liability statute in the first action, and the insurance contract in the present action. It follows that the question of Scott's permission within the terms of Standard's policy was not litigated in the prior action and the principles of collateral estoppel do not apply in favor of Standard. (*Estate of Williams,* 36 Cal.2d 289, 292 [223 P.2d 248, 22 A.L.R.2d 716]; *Babcock* v. *Babcock,* 63 Cal.App.2d 94, 97 [146 P.2d 279]; Rest., Judgments, § 68; see also *Greenfield* v. *Mather,* 32 Cal.2d 23, 45-46 [194 P.2d 1].) We are likewise persuaded that Standard may not invoke the principle of res judicata, since Garmon's suit against Sebastian based upon that owner's section 402 liability is a different cause of action from Garmon's action against Standard based upon the insurance policy itself. (*Taylor* v. *Hawkinson,* 47 Cal.2d 893, 895 [306 P.2d 797]; Rest., Judgments, § 48.)

Standard also argues that since it has been held in *Wildman* v. *Government Employees' Ins. Co.,* 48 Cal.2d 31, 39-40 [307 P.2d 359], that the provisions of Vehicle Code, then section 402 are read into every policy of liability insurance in effect in this state by reason of Vehicle Code, then section 415,[3] it follows necessarily that the meaning of the word "permission" employed in the policy and in former section 402 must be identical, and thus must be given the same construction. ▉ But the claimed incorporation of former section 402 into the policy of insurance would require only that the scope of "permission" within the context of such an automobile liability policy must be at least as broad as the scope of "permission" within former section 402.

▉ It is manifest from what we have heretofore said that the scope of "permission" under such a policy may in certain situations be broader than the scope of "permission" under former section 402, because a different rule of construction is applicable to the owner's liability statute than to the construction of an automobile liability policy, and "permis-

---

[3]The relevant provisions of Vehicle Code, former section 415, are now found in section 16451 of the Vehicle Code of 1959. See note 4, *infra,* for the text of section 16451.

sion'' within the two contexts need not be construed in a similar manner.

It is also urged by Standard that our holding in the case at bar should be strongly influenced by *Hinchey* v. *Sellers*, 7 N.Y.2d 287 [165 N.E.2d 156], wherein a prior action which litigated the question of the owner's consent to the operator under the terms of an automobile liability insurance policy was held to bar, upon the principles of collateral estoppel, a subsequent action involving the question of that owner's consent under an owner's imputed liability statute analogous to our former section 402. However, the suit on the automobile liability policy in *Hinchey* preceded the action under the automobile owners' liability statute, and it would appear that the determination of the question of consent or permission under the construction given the language of an automobile liability policy could be deemed to include the narrow construction (*Leppard* v. *O'Brien*, 225 App.Div. 162, 164 [232 N.Y.Supp. 454, 456]) given to consent or permission in the context of an owners' liability statute. ██ But the converse would not be true, i.e., that permission under an owners' liability statute would necessarily include permission within the context of an automobile liability policy. Since the case now engaging our attention represents the converse of the above situation in the *Hinchey* case, it appears that our instant determination is in accord in principle with the result in *Hinchey*.

Standard also refers us to the recently decided case of *Home Indemnity Co., New York* v. *Lechner*, 191 F. Supp. 116, which determined the issue of whether that federal court should grant declaratory relief, directed to the question of whether the operator of a vehicle involved in an accident was driving with the permission of the named insured within the context of an automobile liability insurance policy, while there was an action pending in a California court involving the question of that owner's permission to the operator within the context of Vehicle Code, section 17150. (Formerly § 402, subd. (a).) In dismissing the suit for declaratory relief, the federal court in *Lechner* concluded that if the California court found that the operator of the vehicle was driving with permission of the owner within the meaning of Vehicle Code, section 17150, ''then the broad terms of the insurance policy defining 'insured' would include [the driver], and the issue of driving with permission would be decided for all purposes.''

(191 F. Supp. 116, 122.) It thus appears that the Lechner case is also in accord with our instant holding.

 It is manifest that "permission" under the omnibus clause of the policy issued to Sebastian must be deemed to include express or implied permission. (*Norris* v. *Pacific Indemnity Co., supra,* 39 Cal.2d 420, 423.) Also, whether the requisite permission was present at the time and place of the accident is a question of fact. (See *Hobbs* v. *Transport Motor Co.,* 22 Cal.2d 773, 778 [141 P.2d 738].) The trial court was thus fully justified in concluding that Scott operated the vehicle with Sebastian's permission, so as to become an additional insured under Standard's policy. That factual conclusion of "permission," supported as it is by substantial evidence and legitimate inferences therefrom, may not be disturbed on appeal. (*Crawford* v. *Southern Pacific Co.,* 3 Cal.2d 427, 429 [45 P.2d 183].)

As an additional basis for its non-liability for Garmon's judgment against Scott, Standard urges us to consider the following provision in the policy it issued to Sebastian. The section "Definition of Insured," reads: "The insurance with respect to any person or organization other than the named insured or such spouse does not apply: (1) to any person or organization, or to any agent or employee thereof, operating an automobile sales agency, repair shop, service station, storage garage or public parking place, with respect to any accident arising out of the operation thereof. . . ." Standard particularly urges that since Scott was an employee of a car wash, and since the car wash was in the nature of a service station or public parking place, it is exempted from the instant liability by the above terms of its policy.

However, it is unnecessary for us to decide whether the trial court correctly concluded that Quick Way was not included as within the above exempted establishments, since the application of the above exclusion would be contrary to the public policy of this state as expressed in Vehicle Code, then section 415,[4] and interpreted in *Wildman* v. *Government Employee's Ins. Co., supra,* 48 Cal.2d 31, 39. It was stated in *Wildman* that "for an insurer to issue a policy of insurance

---

[4]Section 16451 of the Vehicle Code, which now contains the relevant portions of former section 415, provides that: "An owner's policy of liability insurance shall: (b) Insure the person named therein and any other person, as insured, using any described motor vehicle with the express or implied permission of said assured, against loss from the liability imposed by law for damages arising out of the ownership, maintenance, or use of such motor vehicle. . . ."

which does not cover an accident which occurs when a person, other than the [named] insured, is driving with the permission and consent of the [named] insured is a violation of the public policy of this state as set forth in sections 402 and 415 of the Vehicle Code.'' We have also held in *American Automobile Ins. Co.* v. *Republic Indemnity Co., supra,* 52 Cal.2d 507, 509-511, that a condition to a liability policy purporting to exclude coverage for customers operating vehicles of the named insured automobile dealer, and with that dealer's permission, was invalid because of the provisions of section 415 and the rule of the *Wildman* case. (See also *Continental Cas. Co.* v. *Phoenix Constr. Co., supra,* 46 Cal. 2d 423, 438; *Bonfils* v. *Pacific Auto. Ins. Co.,* 165 Cal.App.2d 152, 157-158 [331 P.2d 766]; *Cassin* v. *Financial Indemnity Co.,* 160 Cal.App.2d 631, 635 [325 P.2d 228] [condition of policy excluding coverage while automobile was operated by anyone over 60 years of age not effective because Vehicle Code, section 415, subd. (2), requires that automobile liability policy shall insure permittees of the named insured].)

Section 415 of the Vehicle Code provided that: ''A 'motor vehicle liability policy,' . . . issued . . . to or for the benefit of the person named therein as assured, . . . shall meet the following requirements: . . . (2) Such policy shall insure the person named therein and any other person using or responsible for the use of said motor vehicle . . . with the express or implied permission of said assured. (3) Such policy *shall insure every said person on account of the maintenance, use or operation* of every motor vehicle therein covered . . . against loss from the liability imposed by law arising from such *maintenance, use or operation.* . . .'' (Emphasis added.) Initially, it is clear that the phrase ''every said person,'' in the above subdivision (3), refers to ''the person named therein and any other person using . . . said motor vehicle . . . with the express or implied permission of said assured,'' in above subdivision (2), of section 415. Therefore, since we may not disturb the instant trial court's conclusion that Scott was operating the vehicle with the permission of the named insured, and since Scott was engaged in the maintenance of the Sebastian automobile at the time of the accident, subdivisions (2) and (3) of section 415 compel the conclusion that the policy which Standard issued to Sebastian would be invalid to the extent that it failed to provide coverage for Scott during the occurrence of the within accident. A motor vehicle liability policy issued in this state is deemed to

include all coverage required by law (*Osborne* v. *Security Ins. Co., supra,* 155 Cal.App.2d 201, 210), and any clause in such a contract which conflicts with law may not be enforced. *Canadian Indem. Co.* v. *West Nat. Ins. Co.,* 134 Cal.App.2d 512 [286 P.2d 532], is hereby disapproved to the extent that it approved and applied the similar "garage exclusion" there involved.

While Standard appealed from the whole of the judgment, it has not attacked the trial court's conclusion that Standard's liability was primary for Garmon's judgment against Scott, and that of Exchange, Scott's insurance carrier, was excess. The trial court's above conclusion appears to be correct on the authority of *American Automobile Ins. Co.* v. *Republic Indemnity Co., supra,* 52 Cal.2d 507, 511-513, which involved an "other insurance" clause similar to that which Exchange included in the policy issued to Scott.

The judgment is affirmed.

Gibson, C. J., Traynor, J., Schauer, J., McComb, J., Peters, J., and Dooling, J., concurred.

The petition of appellant Standard Accident Insurance Company for a rehearing was denied October 11, 1961.