226 Cal.App.2d 497 (1964)
WOODROW E. BOHRN et al., Plaintiffs and Resondents,
v.
STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY et al., Defendants, Cross- complainants and Appellants; FARMERS INSURANCE EXCHANGE et al., Cross- defendants and Respondents.
Civ. No. 10748. 
California Court of Appeals. Third Dist. 
April 20, 1964.
 Rich, Fuidge, Dawson & Marsh and Charles C. Dawson, Jr., for Defendants, Cross-complainants and Appellants.
 John J. Hannegan for Plaintiffs and Respondents, and for Cross-defendants and Respondents.
 SPARKS, J. pro tem. [fn. *]
 Appeal is taken from a declaratory judgment entered in favor of plaintiffs and against two insurance companies. Woodrow W. Bohrn and Billy A. Bohrn, his son, as plaintiffs, instituted the action against State Farm Mutual Automobile Insurance Company (hereinafter referred to as "State Farm"), as defendant. State Farm answered, and by way of cross-complaint brought in Farmers Insurance Exchange (hereinafter referred to as "Farmers") and one Lorn A. Booth as cross-defendants.
 On January 1, 1961, Billy, while driving his father's 1955 Dodge automobile, struck and injured Booth, a pedestrian. Billy's father, Woodrow, had a policy with State Farm which provided insurance coverage of $10,000 for bodily injury to one person, and $20,000 for one accident. Woodrow's policy contained the following exclusionary endorsement:
 "In consideration of the premium at which the policy is written it is agreed that the Company shall not be liable and no liability or obligation of any kind shall attach to the Company for losses or damage sustained while any automobile insured hereunder is driven or operated by Bill A. Bohrn except when accompanied by the named insured or the named insured's spouse."
 Billy, at the time of the accident in question, was the owner of his own car, which however was not then in an operable condition. Farmers had issued its policy to Billy, as *500 an assigned risk, with the same limits of $10,000 for one person and $20,000 for one accident.
 Action was brought by Booth to recover for his injuries against both Billy and Woodrow Bohrn. The Bohrns made demand upon State Farm that it defend the action for them and acknowledge financial responsibility to the limits of its policy. This State Farm declined to do, whereupon the Bohrns brought this action for declaratory relief. In its answer and cross-complaint State Farm disclaimed liability because of its exclusionary endorsement, but alleged that if any responsibility did attach, that Farmers would be primarily liable, and State Farm only in the event of an excess.
 There was no dispute that at the time the pedestrian was struck Billy was on a mission to purchase a loaf of bread for the family, and was driving the Dodge automobile with his father's express permission. Billy was unaccompanied at the time.
 The trial court, on a stipulated record, held the exclusionary endoresement to State Farm's policy against public policy and null and void. Judgment was entered against both State Farm and Farmers, it being provided, however, that between the two companies, the limits of State Farm's policy should be exhausted first before resort could be had to Farmers' policy. State Farm appeals.
 Appellant's major premise in its argument for reversal is that the law of this state at the time it issued its restrictive endorsement, and also on the date of the accident, did not forbid an insurance company from declining the risk of a specifically named person. An insurance company, it asserts, has the right to insure and select its own risks, and to decline exposure to known dangerous risks. [fn. 1] Undoubtedly, the last proposition can be accepted generally as a correct statement of law (San Pedro Properties, Inc. v. Sayre & Toso, Inc. 203 Cal.App.2d 750 [21 Cal.Rptr. 844]; Continental Cas. Co. v. Phoenix Constr. Co., 46 Cal.2d 423 [296 P.2d 801, 57 A.L.R.2d 914]; McFarland v. New Zealand Ins. Co., 176 Cal.App.2d 422 [1 Cal.Rptr. 482]), but nevertheless is subject to qualification. As pointed out in the case of Bonfils v. Pacific Auto. Ins. Co., 165 Cal.App.2d 152, 156 [331 P.2d 766] (where the precise point was urged): [1] " 'An insurance company has the right to limit the coverage of a policy issued *501 by it and when it has done so, the plain language of the limitation must be respected.' [Citing case.] However, any such limitation must conform to the law; if contrary to public policy it is void." (Italics added.) (See also Cassin v. Financial Indem. Co., 160 Cal.App.2d 631 [325 P.2d 228]; American Auto. Ins. Co. v. Republic Indem. Co., 52 Cal.2d 507 [341 P.2d 675]; Wheeling v. Financial Indem. Co., 201 Cal.App.2d 36 [19 Cal.Rptr. 879].)
 As of the date of the exclusionary endorsement, and also of the said accident, section 16451 of the Vehicle Code was in full force and effect. [fn. 2] In its standard form of policy issued to plaintiff Woodrow Bohrn appellant conformed to said section 16451 by providing omnibus coverage and defining "additional insureds" as any person who would be driving the vehicle with the permission of the named insured, Woodrow Bohrn.
 The question of whether an insurance company could limit, by appropriate restrictive endorsement, coverage to permissive users of a named insured's vehicle has been a prolific source of litigation in this state (see Continental Cas. Co. v. Phoenix Constr. Co., supra, 46 Cal.2d 423, 438; Wildman v. Government Employees' Ins. Co., 48 Cal.2d 31, 39 [307 P.2d 359]; American Auto. Ins. Co. v. Republic Indem. Co., supra, 52 Cal.2d 507, 509-511; Exchange Cas. & Surety Co. v. Scott, 56 Cal.2d 613, 623 [15 Cal.Rptr. 897, 364 P.2d 833]; Interinsurance Exchange etc. Southern Cal. v. Ohio Cas. Ins. Co., 58 Cal.2d 142 [23 Cal.Rptr. 592, 373 P.2d 640]; Oil Base, Inc. v. Transport Indem. Co., 143 Cal.App.2d 453 [299 P.2d 952]; Cassin v. Financial Indem. Co., supra, 160 Cal.App.2d 631; Bonfils v. Pacific Auto. Ins. Co., supra, 165 Cal.App.2d 152; McFarland v. New Zealand Ins. Co., supra, 176 Cal.App.2d 422; Royal Exchange Assur. v. Universal Underwriters Ins. Co., 188 Cal.App.2d 662 [10 Cal.Rptr. 686]; Globe Indem. Co. v. Universal Underwriters Ins. Co., 201 Cal.App.2d 9 [20 Cal.Rptr. 73]), occasioned, undoubtedly, by the wide variety of endorsements presented for adjudication, and also by intervening changes in the statutes.
 [2] In the Wildman case, supra, the question was not only decisively answered, but a rule of public policy enunciated, *502 as follows, at page 39: "[F]or an insurer to issue a policy of insurance which does not cover an accident which occurs when a person, other than the [named] insured, is driving with the permission and consent of the [named] insured is a violation of the public policy of this state as set forth in sections 402 and 415 [fn. [3]] of the Vehicle Code." In Wildman the Supreme Court further stated that the section of the Vehicle Code (formerly 415) "must be made a part of every policy of insurance issued by an insurer since the public policy of this state is to make owners of motor vehicles financially responsible to those injured by them in the operation of such vehicles. ... [S]uch laws must be considered a part of every policy of liability insurance even though the policy itself does not specifically make such laws a part thereof." (Pp. 39-40.)
 As a result of legislative changes made in the Vehicle Code in 1957, the question was presented again to the Supreme Court. In its decision in Interinsurance Exchange etc. Southern Cal. v. Ohio Cas. Ins. Co., supra, 58 Cal.2d 142, the holding in Wildman was reaffirmed, and the rule of public policy therein announced, confirmed.
 Notwithstanding this history of the problem, and in the face of the numerous adjudications by the Supreme Court and appellate courts, appellant nevertheless contends that the instant appeal presents a question de novo, insofar as it concerns the attempted exclusion of a named individual, rather than a class of persons, from the coverage of a policy.
 In our reading of the Wildman case, we find no language of solace to appellant in this contention. To our thinking, the Supreme Court made it abundantly clear that the omnibus coverage of permissive drivers was truly total, and that considerations of public policy brooked no exceptions. "The substantive law of this state cannot be enlarged, circumvented, defeated, or modified by any provision which the insurer may have elected to place in its contract in derogation of or in conflict therewith. The statute is founded upon principles of public policy and an anomalous situation would be created if the rights of third parties, for whose protection the law was adopted, could be hindered, delayed, or defeated by the private agreements of two of the parties to a triparty contract." (Italics added.) (Language from Malmgren v. *503 Southwestern Auto. Ins. Co., 201 Cal. 29, 33-34 [255 P. 512]; quoted with approval in Wildman v. Government Employees' Ins. Co., supra, at pp. 39-40.)
 The holding in Wildman was, of course, binding upon subsequent decisions in trial and appellate courts (Estate of Maguire, 14 Cal.App.2d 388, 390 [50 P.2d 209]; Auto Equity Sales, Inc. v. Superior Court, 57 Cal.2d 450 [20 Cal.Rptr. 321, 369 P.2d 937]), and was followed consistently in the following decisions by the appellate court: Cassin v. Financial Indem. Co., supra, 160 Cal.App.2d 631; Bonfils v. Pacific Auto. Ins. Co., supra, 165 Cal.App.2d 152; McFarland v. New Zealand Ins. Co., supra, 176 Cal.App.2d 422; Royal Exchange Assur. v. Universal Underwriters Ins. Co., supra, 188 Cal.App.2d 662; Globe Indem. Co. v. Universal Underwriters Ins. Co., 201 Cal.App.2d 9 [20 Cal.Rptr. 73]. The rule of public policy therein expressed has been repeated and reaffirmed by the Supreme Court itself (American Auto. Ins. Co. v. Republic Indem. Co., supra, 52 Cal.2d 507, 509-511; Exchange Cas. & Surety Co. v. Scott, supra, 56 Cal.2d 613, 623.) In its latest utterance on the question (Interinsurance Exchange etc. So. Cal. v. Ohio Cas. Ins. Co., supra, 58 Cal.2d 142, 154 [23 Cal.Rptr. 592, 373 P.2d 640]), the court listed a number of cases decided subsequent to Wildman in which certain types of attempted exclusions had been nullified. (Exchange Cas. & Surety Co. v. Scott, supra, 56 Cal.2d 613 [garage exclusion]; American Auto. Ins. Co. v. Republic Indem. Co., supra, 52 Cal.2d 507 [customer exclusion]; Bonfils v. Pacific Auto. Ins. Co., supra, 165 Cal.App.2d 152 [excluding others than named insured]; Cassin v. Financial Indem. Co., 160 Cal.App.2d 631 [325 P.2d 228] [drivers over 60 years old]; Royal Exchange Assur. v. Universal Underwriters Ins. Co., supra, 188 Cal.App.2d 662 [garage exclusion]; and Wheeling v. Financial Indem. Co., supra, 201 Cal.App.2d 36 [military personnel exclusion].) In Interinsurance Exchange etc. Southern Cal. v. Ohio Cas. Ins. Co., supra, the court stated, at page 150: "Any provision in a policy which purported to exclude certain classes of permissive users from coverage was declared to be contrary to this public policy and, therefore, void." (Italics added.) It is upon this one sentence lifted from the context of the decision, that appellant predicates its contention that the exclusionary ban was meant to apply only to groups or classes of permissive drivers, and not to named individuals. This interpretation appears to us to be completely unwarranted and untenable, *504 and contrary to the rule of liberal construction enjoined by the Supreme Court upon the entire automobile financial responsibility law, to the end that there be given "monetary protection to that ever changing and tragically large group of persons who while lawfully using the highways themselves suffer grave injury through the negligent use of those highways by others." (Continental Cas. Co. v. Phoenix Constr. Co., supra, 46 Cal.2d 423, 434.)
 [3] The purpose of Vehicle Code section 16451 is to broaden insurance coverage and to protect those injured by the negligence of drivers operating automobiles with the owners' consent. (Jurd v. Pacific Indem. Co., 57 Cal.2d 699, 703 [21 Cal.Rptr. 793, 371 P.2d 569]; Interinsurance Exchange etc. Southern Cal. v. Ohio Cas. Ins. Co., supra, 58 Cal.2d 142.) [4] There are no exceptions in the statute to the omnibus coverage thus required. Since the provisions of section 16451 are made a part of every policy of insurance issued by an insurer, if not expressly then by implication of law, it must follow that any provision which would exclude such coverage, whether it relates to a group or class of permissive drivers, or to some named individual, being contrary to the provisions of the statute, and against public policy, must be held invalid and void. (Wildman v. Government Employees' Ins. Co., supra; Exchange Cas. & Surety Co. v. Scott, supra; Interinsurance Exchange etc. Southern Cal. v. Ohio Cas. Ins. Co., supra.)
 [5] Appellant attempts to find support for its main thesis in a 1963 amendment to the Insurance Code. [fn. 4] This enactment *505 could, of course, have no possible effect upon the judgment in the instant case since it is an established rule of construction that statutes are not to be given a retroactive effect unless the Legislature has expressly so declared. (DiGenova v. State Board of Education, 57 Cal.2d 167, 174 [18 Cal.Rptr. 369, 367 P.2d 865]; Corning Hospital Dist. v. Superior Court, 57 Cal.2d 488, 494 [20 Cal.Rptr. 621, 370 P.2d 325].) Specifically, in Interinsurance Exchange etc. Southern Cal., supra, it was held in reference to a 1957 amendment to then section 415 of the Vehicle Code that such amendment would have no retroactive effect upon accidents occurring before its effective date. (American Auto. Ins. Co. v. Republic Indem. Co., supra, 52 Cal.2d 507; Interinsurance Exchange etc. Southern Cal. v. Ohio Cas. Ins. Co., supra, 58 Cal.2d 142.) Since the 1963 amendment has no actual application to the problem now before us, we fail to recognize the interpretive value attached to it by appellant. (Estate of Todd, 17 Cal.2d 270, 274-275 [109 P.2d 913].)
 The assertion that the endorsement in question although entitled "Driver Exclusion Agreement" was not in fact an "exclusion," since Billy was permitted to operate his father's car when accompanied by one of his parents, has no validity. By whatever name it may be called, its effect, if upheld in the instant case, would have been to exonerate appellant from liability under its policy. Other contentions urged by appellant on this phase of its appeal are essentially variations on its main theme, which we have already considered.
 The remaining point urged by appellant for reversal is that if its policy be held to cover Billy in the operation of his father's car, then Farmers' liability should have been declared to be primary, and State Farm's excess. Farmers, it contends, undertook and intended to cover the risk of insuring Billy, whereas State Farm did not wish to accept this exposure and by its endorsement attempted to limit it; and, to hold State Farm primarily responsible would be unjustly to enrich Farmers, which had received a higher premium for the assigned risk.
 The policies of the two companies are "standard form" and, as appellant concedes, provide for substantially the *506 same result as to "other insurance": namely, that payment of liability shall be prorated except with respect to nonowned automobile coverage, in which event the coverage shall be excess over that of the nonowned vehicle. [6] In American Auto. Ins. Co. v. Republic Indem. Co., supra, 52 Cal.2d 507, the Supreme Court had under consideration "other insurance" clauses of similar type, that is, clauses first providing generally for prorating where there is other insurance covering the loss, and as a specific exception thereto when the named insured is driving a car not owned by him that the insurance would be excess over all other insurance. After noting (at p. 512) that the cases "have generally given effect to the excess provision in the policy of the driver and have held that the insurer of the owner is primarily liable and must bear the whole loss, within the limits of its policy (Pleasant Valley etc. Assn. v. Cal-Farm Ins. Co., 142 Cal.App.2d 126, 136 [298 P.2d 109]; General Ins. Co. v. Western Fire & Cas. Co., 241 F.2d 289, 295; Farm Bureau Mut. Auto. Ins. Co. v. Preferred Acc. Ins. Co., 78 F.Supp. 561, 565; Citizens Cas. Co. of N.Y. v. Allied Mut. Ins. Co. 217 Md. 494 [144 A.2d 73])," the Supreme Court construed such clauses as follows (at p. 513): "[T]he excess provision alone controls in every situation which falls within its terms, such as when a person is driving the car of another and both the driver and the owner have insurance, and that the prorate provision alone governs in all other situations, for example, when more than one policy has been issued to the same person. When the driver's insurance is excess, it necessarily follows that the insurance of the owner is primary, and therefore the owner's insurer must bear the entire loss to the extent of the limits of the policy." This principle of construction was followed in Continental Cas. Co. v. Zurich Ins. Co., 57 Cal.2d 27 [17 Cal.Rptr. 12, 366 P.2d 455]. (See, also, Exchange Cas. & Surety Co. v. Scott, supra, 56 Cal.2d 613, 624; McConnel v. Underwriters at Lloyds of London, 56 Cal.2d 637, 646 [16 Cal.Rptr. 362, 365 P.2d 418].)
 The rule announced in these decisions is controlling upon the instant appeal. It cannot be said to achieve an inequitable result for in its overall operation an individual insurance carrier would only be made to pay his fair share of the burden in dual insurance situations.
 [7] The obvious purpose of the endorsement was to exclude coverage when Billy Bohrn was driving the insured vehicle, unaccompanied by one of his parents, not to modify the provisions of the two policies relating to "other insurance." *507 The refusal of the trial court to construe the exclusionary endorsement as an inversion of the rule of primary and excess liability was correct.
 We find no merit in the contention that Billy Bohrn and his insurance company were unjustly enriched and should indemnify appellant. To reach such a conclusion would necessitate the giving of effect to a provision correctly held by the trial court to be against public policy and void.
 The judgment is affirmed.
 Pierce, P. J., and Friedman, J., concurred.
 "An owner's policy of liability insurance shall:"
 "(a) * * *"
 "(b) Insure the person named therein and any other person, as insured, using any described motor vehicle with the express or implied permission of said assured, ..."
 "(a) * * *"
 "(b) * * *"
 "(c) * * *"
 "(d) Provision insuring the insured name therein and to the same extent that coverage is afforded such named insured in respect to said described motor vehicles, any other person using, or legally responsible for the use of, said motor vehicles, provided the motor vehicles are being used by the named insured or with his permission, express or implied."
 "(e) Notwithstanding the foregoing subdivisions, the insurer and any named insured may, by the terms of such policy or by a separate writing, agree that coverage under the policy shall not apply while said motor vehicles are being used by a natural person or persons designated by name. Such agreement by any named insured shall be binding upon every insured to whom such policy applies."
 "(f) * * *"
NOTES
[fn. *] *. Assigned by Chairman of Judicial Council.
[fn. 1] 1. The record disclosed that Billy had been involved in a number of automobile accidents, and that State Farm had imposed its exclusionary endorsement for that reason.
[fn. 2] 2. Vehicle Code section 16451 provided in part:
[fn. [3]] [3]. Vehicle Code section 16451 was enacted in 1959 and was based on former Vehicle Code section 415, subdivision (b), as amended by Statutes of 1957, without substantial change.
[fn. 4] 4. The new section (11580.1) added to the Insurance Code reads: "No policy of liability insurance covering liability arising out of the ownership, maintenance or use of any motor vehicle shall be issued or delivered in this State to the owner of a motor vehicle, or shall be issued or delivered by any insurer licensed in this State, upon any motor vehicle then principally garaged or principally used in this State unless it contains the following provisions: