[Civ. No. 22810.   First Dist., Div. One.   June 14, 1966.]

GLENS FALLS INSURANCE COMPANY, Plaintiff and Appellant, v. CONSOLIDATED FREIGHTWAYS, Defendant and Respondent.

Robert E. Lee for Plaintiff and Appellant.

Robert C. Stetson and James R. Hagan for Defendant and Respondent.

SULLIVAN, P. J.—This is an appeal by plaintiff Glens Falls Insurance Co. (Glens Falls) from a summary judgment entered in favor of Consolidated Freightways (Consolidated) in an action for declaratory relief. It is presented on a record consisting of an agreed statement of facts with exhibits attached. (Cal. Rules of Court, rule 6.)

At all times material herein, Consolidated was a common carrier engaged in interstate and intrastate commerce. On August 18, 1961, John C. Pratt, a truck-driver employed by it, drove a truck owned by Consolidated to the premises of the Basalt Rock Company (Basalt) in Napa to pick up a load of concrete beams. At Basalt, Pratt began loading the beams on the truck with the assistance of Forrest M. Jorden, a Basalt employee who was operating a forklift in order to transfer the beams from the loading area to the truck. This forklift, which was owned by Basalt and used only on the premises of its Napa plant, was not licensed by the California Motor Vehicle Department.[1]

During the loading operation, Pratt, who was working on the truck, bent over to reach for some wooden blocks used to keep the beams separated and as he rose up to place the blocks between the beams struck his head against a steel hook which was at that point suspended from the forklift over the bed of the truck. As a result he sustained injuries. On August 14, 1962, Pratt commenced an action for damages in the sum of $50,000 against Jorden and the latter's employer Basalt, claiming that Jorden was negligent in operating the forklift.

At the time of the above accident there was in full force and effect a "Comprehensive General — Automobile Liability Policy" issued by Glens Falls to Basalt. On said date, according to the agreed statement on appeal, Consolidated "was an authorized self-insurer in the State of California and purchased only indemnity insurance to hold itself harmless from loss over the amount of $20,000 in any one occurrence." On November 29, 1962, Glens Falls tendered defense of the above action to Consolidated on the theory that Jorden and Basalt were permissive users of the truck during the loading operation and therefore additional insureds under Consolidated's insurance coverage. Consolidated rejected the tender, stating that its excess indemnity contract contained neither a "loading and unloading" clause nor a "permissive user" clause. As a result Glens Falls continued with the defense of the action, eventually compromising the action for $2,000.

On July 24, 1963, Glens Falls commenced the instant action against Consolidated seeking a declaration of its rights and duties under the respective insurance of the parties. Each of

---

[1]Facts pertaining to ownership and licensing of the forklift are found in the declaration of John Anderson, Secretary-Treasurer of Basalt.

the parties moved for a summary judgment. The court denied plaintiff's motion and granted defendant's motion. In essence the reasoning of the court, as disclosed by its memorandum decision, was "that unless an insurance policy exists which covers loading and unloading as an expansion of the term 'use' of a vehicle covered, loading and unloading are not such a use of a vehicle which would impose liability on the owner for injuries caused by other parties. On the basis of this conclusion under the facts of this case, the defendant is not legally responsible for the negligence of the employee of Basalt Rock Company." Summary judgment was entered in favor of defendant. This appeal followed.

The contentions of Glens Falls on appeal substantially reflect its position taken on its motion for summary judgment in the court below. Said plaintiff urges (1) that Jorden was a permissive user of Consolidated's truck and as a matter of law was covered by the latter's "(self)-insurance"; (2) that Jorden had no coverage whatsoever under the Glens Falls policy; and (3) that under the doctrine of equitable subrogation, Consolidated was liable for the costs and expenses incurred by Glens Falls in settling the action brought by Pratt.

On the first issue, the contrary positions of the parties may be summarized as follows: Glens Falls argues that since, in respect to an owner's policy of automobile liability insurance issued under Vehicle Code section 16451[2] requiring coverage of permissive users, a person loading or unloading a truck has been held to be "using" said vehicle within the meaning of the policy and to be an additional insured thereof, such a person should also be considered to be "using" the truck and to be under similar extended coverage where the owner carries no insurance but is a self-insurer. Thus, according to plaintiff, insurance and self-insurance are, so to speak, equivalent concepts.[3] Consolidated to the contrary argues that the only

[2]Section 16451 in pertinent part provides: "An owner's policy of liability insurance shall: . . . (b) Insure the person named therein and any other person, as insured, using any described motor vehicle with the express or implied permission of said assured, against loss from the liability imposed by law for damages arising out of ownership, maintenance, or use of such motor vehicle . . ."

Hereafter, unless otherwise noted, all section references are to the Vehicle Code.

[3]Plaintiff attempts to establish this equivalence by enclosing the word "self" in parentheses. Plaintiff thus easily argues that "if Forrest Jorden was 'using' the Consolidated truck, he was an *insured* under the Consolidated *insurance*." (Italics added.)

possible basis for the imposition of liability upon it is section 17150,[4] emphasizing that such liability is imputed from negligence in the *operation* of a motor vehicle; that in the instant case Jorden, Basalt's employee, was never in physical control of, and did not *operate*, Consolidated's truck; that "Glens Falls ignores the reality that Consolidated is not an insurance company and attempts to fix liability upon Consolidated by means of a tortured application of Section 16451"; that Consolidated's liability must be determined under section 17150 which must be construed strictly so as to avoid the imposition of liability upon nonnegligent owners; and that under such a construction, the "use" of a motor vehicle does not include "loading and unloading." No reported California case dealing with this precise problem has been cited or found.

At the outset we review the Vehicle Code sections involved. Section 17150 (see fn. 4, *ante*) upon which defendant focuses attention is found in division 9 of the Vehicle Code entitled "Civil Liability" and more particularly in a chapter and article thereof dealing with the civil liability of private owners. The liability which it imposes upon the owner of a motor vehicle is predicated upon a theory of imputed negligence in cases where the principle of *respondeat superior* is inapplicable. (*Burgess* v. *Cahill* (1945) 26 Cal.2d 320, 323 [158 P.2d 393, 159 A.L.R. 1304]; *Peterson* v. *Grieger, Inc.* (1961) 57 Cal.2d 43, 50 [17 Cal.Rptr. 828, 367 P.2d 420]; *Casey* v. *Fortune* (1947) 78 Cal.App.2d 922, 925 [179 P.2d 99]; *Rosenthal* v. *Harris Motor Co.* (1953) 118 Cal.App.2d 403, 405-406 [257 P.2d 1034].) This section defines the owner's liability in such cases "in order to make him liable for the negligence of any person to whom he had expressly or impliedly given permission to *operate* his car, and thereby prevent him from escaping liability by saying that his car was being used without express authority or not in his business. [Citations.]" (Italics added.) (*Souza* v. *Corti* (1943) 22 Cal.2d 454, 457 [139 P.2d 645, 147 A.L.R. 861]; *Burgess* v. *Cahill, supra*; *Anderson* v. *Wagnon* (1952) 110 Cal.App.2d 362, 369 [242 P.2d 915].) The foundation of an

---

[4]Section 17150 provides: "Every owner of a motor vehicle is liable and responsible for the death of or injury to person or property resulting from negligence in the *operation* of the motor vehicle, in the business of the owner or otherwise, by any person using or operating the same with the permission, express or implied, of the owner, and the negligence of such person shall be imputed to the owner for all purposes of civil damages." (Italics added.)

owner's liability under section 17150 is the permission, express or implied, given by the owner to another to use the motor vehicle. (*Krum* v. *Malloy* (1943) 22 Cal.2d 132, 134 [137 P.2d 18]; *Burgess* v. *Cahill, supra*; *Davidson* v. *Ealey* (1945) 69 Cal.App.2d 254, 258 [158 P.2d 1000]; *Rosenthal* v. *Harris Motor Co., supra*, at p. 406; *Scollan* v. *Government Emp. Ins. Co.* (1963) 222 Cal.App.2d 181, 184 [35 Cal.Rptr. 40].)

Section 16451, on the other hand, is found in division 7 of the Vehicle Code which constitutes the Automobile Financial Responsibility Law (§§ 16000-16503). Chapter 1 thereof (§§ 16000-16110) deals with "Security Following Accident" and chapter 2 thereof (§§ 16250-16377) deals with "Suspensions Following Unsatisfied Judgments." Generally speaking, these sections of the Financial Responsibility Law provide that the driver of a motor vehicle involved in an accident resulting in damage to property of any one person in excess of $100 or in bodily injury or death must deposit security as specified to satisfy any final judgment or judgments for such bodily injury or property damage unless he complies with one of the conditions of exemption therein set forth (§§ 16050, 16020). Where the driver fails to deposit the required security and also fails to establish his exemption from security, his privilege of driving a motor vehicle in this state is suspended (§ 16080). Where at the time of the accident, the driver was driving a motor vehicle owned, operated or leased by the employer of the driver and with the permission of said employer, the above-mentioned security provisions apply to the employer and the above-mentioned suspension provisions "shall apply to the registration of all vehicles not covered by insurance, bond, or self-insurance certificate at the time of the accident which vehicles were owned, operated, or leased by the employer and shall not apply to the driver." (§ 16022.)

So far as is pertinent to our present discussion, exemption from the requirement of security may be established, among other ways, by showing that the owner of the motor vehicle involved in the accident is a self-insurer (§ 16055)[5]; or by filing with the motor vehicle department satisfactory evidence that the owner had a motor vehicle liability policy or

[5]Section 16055 provides: "Exemption may be established if the owner of the motor vehicle involved in the accident was a self-insurer. Any person in whose name more than 25 motor vehicles are registered may qualify as a self-insurer by obtaining a certificate of self-insurance issued by the department as provided in this article."

bond complying with statutory requirements in effect at the time of the accident with respect to the driver or the motor vehicle involved or that the driver, if he was not the owner, had such a bond or motor vehicle liability policy with respect to his operation of a nonowned motor vehicle. (§§ 16057, 16059.)

Chapter 3 (§§ 16430-16487) of the Automobile Financial Responsibility Law prescribes various methods of giving proof of ability to respond in damages resulting from the ownership and operation of a motor vehicle in the minimum amounts required.[6] Thus proof may be given by the written certificate of an insurance carrier authorized to do business in California that a motor vehicle liability policy has been issued and is in effect (§ 16431), by the deposit with the department of $25,000 (§ 16435 and see fn. 6, *ante*) or by the written certificate of a self-insurer holding a certificate of self-insurance (§ 16436 and see fn. 5, *ante*).

A motor vehicle liability policy "means an owner's policy or an operator's policy, or both, of liability insurance, . . ." (§ 16450). An owner's policy of liability insurance must insure within the required limits "the person named therein and any other person, as insured, using any described motor vehicle with the express or implied permission of said assured, . . ." (§ 16451, subd. (b)). ▮ It is now well settled that every motor vehicle liability policy as a matter of law covers permissive users and that inasmuch as sections 17150 (former § 402) and 16451 (former § 415) "set forth the public policy of this state such laws must be considered a part of every policy of liability insurance even though the policy itself does not specifically make such laws a part thereof." (*Wildman* v. *Government Employees' Ins. Co.* (1957) 48 Cal.2d 31, 39-40 [307 P.2d 359]; *Interinsurance Exchange* v. *Ohio Cas. Ins. Co.* (1962) 58 Cal.2d 142, 150 [23 Cal.Rptr. 592, 373 P.2d 640]; *Bonfils* v. *Pacific Auto. Ins. Co.* (1958) 165 Cal.App.2d 152, 156-158 [331 P.2d 766]; *American Auto. Ins. Co.* v. *Transport Indem. Co.* (1962) 200 Cal.App.2d 543,

---

[6]That is, damages "of at least ten thousand dollars ($10,000), and, subject to the limit of ten thousand dollars ($10,000) for each person injured or killed, of at least twenty thousand dollars ($20,000) for such injury to, or the death of, two or more persons in any one accident, and for damages to property (in excess of one hundred dollars ($100)), of at least five thousand dollars ($5,000) resulting from any one accident. Proof of ability to respond in damages may be given in any manner authorized in this chapter." (§ 16430.)

552 [19 Cal.Rptr. 558]; *Campidonica* v. *Transport Indemnity Co.* (1963) 217 Cal.App.2d 403, 406 [31 Cal.Rptr. 735]; *Bohrn* v. *State Farm etc. Ins. Co.* (1964) 226 Cal.App.2d 497, 502 [38 Cal.Rptr. 77].)

So far as the imputed negligence statute (§ 17150) is concerned, it has been held in a number of cases that the legislative purpose in its enactment (i.e., of § 17150 and its predecessor sections) "was to protect innocent third parties from the careless use of automobiles and that this protection should be paramount to the rights of an owner who has permitted the use of his car by others even though he, personally, was not guilty of negligence." (*Burgess* v. *Cahill, supra,* 26 Cal.2d 320, 323; *Souza* v. *Corti, supra,* 22 Cal.2d 454, 457; *Rosenthal* v. *Harris Motor Co., supra,* 118 Cal.App.2d 403, 405-406; *Mason* v. *Russell* (1958) 158 Cal.App.2d 391, 393 [322 P.2d 486]; *Elkinton* v. *California State Auto. Assn.* (1959) 173 Cal.App.2d 338, 345 [343 P.2d 396].) While, as Consolidated points out, it has been stated that the section is to be "construed in a manner not favoring imposition of liability on the otherwise nonnegligent owner" (*Exchange Cas. & Surety Co.* v. *Scott* (1961) 56 Cal.2d 613, 619 [15 Cal.Rptr. 897, 364 P.2d 833]; in accord: *Weber* v. *Pinyan* (1937) 9 Cal.2d 226, 229-230 [70 P.2d 183, 112 A.L.R. 407]; *Cook* v. *Superior Court* (1936) 12 Cal.App.2d 608, 611 [55 P.2d 1227]; *Jones* v. *Allen* (1960) 185 Cal.App.2d 278, 281-282 [8 Cal.Rptr. 316]; *Heves* v. *Kershaw* (1961) 198 Cal.App.2d 340, 346 [17 Cal.Rptr. 837]), it has more recently been said, acknowledging a more liberal rule of construction, that "former section 402 [now § 17150] must in general be liberally construed in accordance with 'the palpable intent of the Legislature to impose a new liability consonant with new conditions.'" (*Peterson* v. *Grieger, Inc., supra,* 57 Cal.2d 43, 51; *Interinsurance Exchange* v. *Ohio Cas. Ins. Co., supra,* 58 Cal.2d 142, 153-154.)[7]

So far as the Automobile Financial Responsibility Law (§§ 16000-16503) is concerned, it has been held in a number of

---

[7]Consolidated contends that a rule of *strict* construction has been *consistently* applied to section 17150, relying upon the *Exchange Casualty, Cook, Weber, Jones* and *Heves* cases, *supra.* *Peterson, supra,* which, as already noted, states that section 17150 "must in general be *liberally* construed" (italics added), points out that the "rule of strict construction has been legitimately applied in *certain* situations," thereupon referring to all of the cases cited by Consolidated except *Heves.* (Italics added.) (See 57 Cal.2d at p. 51, fn.)

cases that said *entire* law must be liberally construed to the end of fostering its main objective of giving "monetary protection to that ever changing and tragically large group of persons who while lawfully using the highways themselves suffer grave injury through the negligent use of those highways by others." (*Continental Cas. Co. v. Phoenix Constr. Co.* (1956) 46 Cal.2d 423, 434 [296 P.2d 801, 57 A.L.R.2d 914]; *Interinsurance Exchange v. Ohio Cas. Ins. Co., supra,* 58 Cal.2d 142, 153; *Mission Ins. Co. v. Feldt* (1964) 62 Cal.2d 97, 101 [41 Cal.Rptr. 293, 396 P.2d 709]; *Bonfils v. Pacific Auto. Ins. Co., supra,* 165 Cal.App.2d 152, 156; *Wisdom v. Eagle Star Ins. Co.* (1963) 211 Cal.App.2d 602, 605 [27 Cal.Rptr. 599]; *Ohio Cas. Ins. Co. v. Armendariz* (1964) 224 Cal.App.2d 56, 64 [36 Cal.Rptr. 274]; see *Taylor v. Preferred Risk Mut. Ins. Co.* (1964) 225 Cal.App.2d 80, 82 [37 Cal.Rptr. 63].)

■ The requirement of an omnibus coverage of permissive users (§ 16451) reflects a legislative purpose of broadening insurance coverage so as to protect those injured by the negligence of any person using the motor vehicle with the owner's consent. (*Jurd v. Pacific Indem. Co.* (1962) 57 Cal.2d 699, 703 [21 Cal.Rptr. 793, 371 P.2d 569]; *Interinsurance Exchange v. Ohio Cas. Ins. Co., supra,* 58 Cal.2d 142, 153 and *Bohrn v. State Farm etc. Ins. Co., supra,* 226 Cal.App.2d 497, 504.)

■ However, as Consolidated points out to us, section 16451 does not create any independent legal liability for the negligent operation of a motor vehicle by a permissive user. As we have explained, that section merely prescribes the necessary terms and provisions of an insurance policy furnished as proof of ability to respond in damages and thus constituting one of the several methods of establishing exemption from the requirement of depositing security to satisfy any final judgment or judgments for bodily injury or property damage (§ 16057). ■ Indeed, the Automobile Financial Responsibility Law "does not in so many words make mandatory the procuring of a liability insurance policy prior to the first accident and judgment, . . ." (*Continental Cas. Co. v. Phoenix Constr. Co., supra,* 46 Cal.2d 423, 436.)

Where an automobile liability policy furnishes omnibus coverage for permissive users in accordance with section 16451 and also expressly provides that such use of the motor vehicles "includes the loading and unloading thereof," it has uniformly been held in California that a person engaged in the loading and unloading of the vehicle is "using" it within the

terms of the policy and is an additional insured under the policy. (See e.g., *Continental Cas. Co.* v. *Zurich Ins. Co.* (1961) 57 Cal.2d 27, 33 [17 Cal.Rptr. 12, 366 P.2d 455]; *Pleasant Valley etc. Assn.* v. *Cal-Farm Ins. Co.* (1956) 142 Cal.App.2d 126, 134 [298 P.2d 109]; *Columbia Southern Chemical Corp.* v. *Manufacturers & Wholesalers Indem. Exchange* (1961) 190 Cal.App.2d 194, 203 [8] [11 Cal.Rptr. 762]; *American Auto. Ins. Co.* v. *Transport Indem. Co., supra,* 200 Cal.App.2d 543, 547; *Standard Acc. Ins. Co.* v. *Hartford Acc. & Indem. Co.* (1962) 206 Cal.App.2d 17, 19 [23 Cal.Rptr. 424]; *Industrial Indem. Co.* v. *General Ins. Co.* (1962) 210 Cal.App.2d 352, 356 [26 Cal.Rptr. 568]; *Travelers Ins. Co.* v. *Norwich Union Fire Ins. Soc.* (1963) 221 Cal.App.2d 150, 151-152 [34 Cal.Rptr. 406].) Where such policy furnishes such omnibus coverage but does *not* contain an express provision that "use" of the vehicle "includes the loading and unloading thereof," it has also been held that a person engaged in the loading and unloading operation is "using" the vehicle and is an additional insured under the policy. (*Campidonica* v. *Transport Indem. Co., supra,* 217 Cal.App.2d 403, 406-407; *General Pump Service, Inc.* v. *Travelers Ins. Co.* (1965) 238 Cal.App.2d 81, 87-88 [47 Cal.Rptr. 533]; *United States Steel Corp.* v. *Transport Indem. Co.* (1966) 241 Cal.App.2d 461, 465-466 [50 Cal.Rptr. 576]; see *Continental Cas. Co.* v. *Zurich Ins. Co., supra,* 57 Cal.2d 27, 33; *American Auto. Ins. Co.* v. *Transport Indem. Co., supra,* 200 Cal.App.2d 543, 553.)

The rationale of these and similar cases dealing with the contractual obligations of an automobile liability policy is that the word "use" must be given a broad and comprehensive meaning so as to effect broad coverage and that the acts coming within such use are not necessarily those arising out of or related to the *operation* of the vehicle. Thus in *American Auto. Ins. Co.* v. *American Fid. & Cas. Co.* (1951) 106 Cal. App.2d 630 [235 P.2d 645] the court said: "It has uniformly been held that the 'loading and unloading' provision in insurance contracts, such as involved here, is one of extension. It expands, rather than limits, the term 'the use of' the motor vehicle somewhat beyond its usual connotation so as to bring within the policy some acts *in which the motor vehicle itself*

---

[8]Overruled on other grounds in *Continental Casualty Co.* v. *Zurich Ins. Co., supra,* 57 Cal.2d 27, 38.

*does not play any part.* [Fn. omitted.]'' (Italics added.) (P. 635.) ''Under defendant's policy it is liable for damages because of injury to property caused by accident and arising out of the *use* of the motor vehicle. Such a policy does not require that the injury be a direct and proximate result, in any strict legal sense of that term, of the use of the motor vehicle covered by the policy. [Citations.]'' (P. 637.) In *Columbia Southern Chemical Corp.* v. *Manufacturers & Wholesalers Indem. Exchange, supra,* 190 Cal.App.2d 194, 202-203 it was said: ''The term 'using,' when used in a policy without restrictive terms, must be understood in its most comprehensive sense. *It does not require* that the injury be the direct and proximate result in any strict legal sense of *the active movement of the motor vehicle* covered by the policy. The term 'loading and unloading' must be understood as expanding the coverage intended by the word 'use' or 'using,' and is not a term of restriction as used in this policy. The policy with which we are here involved contains no words of limitation pertinent to the matters here under consideration. Again, it is not necessary that the injury be directly and proximately caused, in the strict legal sense, by *the activities of the motor vehicle itself. Obviously, when the motor vehicle is at rest for loading and unloading, there can be little, if any, activity of the motor vehicle proper.* Thus, in applying the coverage paid for by the insurance premium, the term 'loading and unloading' has been applied to cover many phases of that operation which do not involve direct activity of the vehicle.'' (Italics added.)

In *Industrial Indem. Co.* v. *General Ins. Co., supra,* 210 Cal.App.2d 352, under facts somewhat similar to those of the instant case, a truck driver delivered a load of concrete pipe to owners of a crane at a job site and received the assistance of the crane in unloading the pipe. During the unloading operation he was injured as a result of being struck by a section of the pipe hanging from the crane. Relying upon *American Auto. Ins. Co., supra,* the court held that the negligence of the crane operator was covered by the policy, stating: ''Here, while the truck does not form a legal basis of liability to the truck driver, under the terms and conditions, General is obligated to defend and indemnify the crane operator and its owners as additional insureds because their liability to the truck driver was incurred in 'using' that truck. . . . Here the crane operator was using the Hurst truck in the sense of

unloading it. The mere fact the crane, as an independent instrumentality, was also used to accomplish this objective does not change the result." (Pp. 357-358.)

In the instant case, Glens Falls attempts to invoke and to apply against Consolidated the above rules concerning "use" which have been developed only in cases involving automobile liability insurance policies. The authorities which it cites are only those dealing with such situations.[9] Defendant Consolidated is not an insurance carrier. Nor does this case involve any motor vehicle liability policy issued and outstanding at the time of the accident. Consolidated is merely an authorized self-insurer or, to put it more exactly, a company to which the motor vehicle department has issued a certificate of self-insurance. ▉ Neither the Vehicle Code sections referring to self-insurance (§§ 16055, 16056) nor any other sections of said code contain any provisions that such certificate is or constitutes a policy of motor vehicle liability insurance or that said certificate shall be deemed to incorporate or embrance provisions required in such policies (§ 16451). Indeed the Vehicle Code nowhere intimates any connection between section 16451 and sections 16055, 16056. ▉ A certificate of self-insurance is not a motor vehicle liability *policy* of insurance. In a word, it is not an insurance policy at all and plaintiff has offered no authority that it is. As we previously explained, it is merely one of the several methods provided by law for establishing exemption from furnishing security. Faced with these realities, Glens Falls attempts to transmogrify the certificate of "self-insurance" by dropping the word "self," to assume that the resultant product is "insurance" and thereafter to engraft on such "insurance" all of the rules dealing with liability insurance. No authority, statutory or decisional, supports such a construction.

The simple answer here is that this case does not involve the contractual obligations of an insurance company. Nor are any

[9]Plaintiff cites *Continental Cas. Co.* v. *Phoenix Constr. Co., supra,* 46 Cal.2d 423; *Wildman* v. *Government Employees' Ins. Co., supra,* 48 Cal.2d 31; *American Auto. Ins. Co.* v. *Republic Indem. Co.* (1959) 52 Cal.2d 507 [341 P.2d 675]; *Exchange Cas. & Surety Co.* v. *Scott, supra,* 56 Cal.2d 613; *Interinsurance Exchange* v. *Ohio Cas. Ins. Co., supra,* 58 Cal.2d 142; *Employers etc. Ins. Co.* v. *Pacific Indem. Co.* (1959) 167 Cal. App.2d 369 [334 P.2d 658]; *Columbia Southern Chemical Corp.* v. *Manufacturers & Wholesalers Indem. Exchange, supra,* 190 Cal.App.2d 194; *Bohrn* v. *State Farm etc. Ins. Co., supra,* 226 Cal.App.2d 497; *Travelers Ins. Co.* v. *American Fidelity & Cas. Co.* (D. Minn. 1958) 164 F.Supp. 393; and 12 Couch on Insurance 2d (1964) § 45:64, p. 153.

obligations or any rules of extended coverage for "use" in insurance policy situations in any way imposed upon Consolidated. No liability or responsibility for the activities of Jorden can be imposed upon it by virtue of section 16451. Any liability of Consolidated for Jorden's acts must be that based on section 17150 because of the negligence of Jorden in the *operation* of the truck. No authority has been cited to us by plaintiff, nor has any been found, holding that loading activities such as those engaged in by Jorden constitute an *operation* of the truck. Indeed, plaintiff makes no claim at all that Jorden was *operating* the truck. Nor do we think such a claim could be made under the instant facts. Loading a truck is not operating it, as any teamster knows.

The contention made by plaintiff that Jorden was in some way "covered by Consolidated's self-insurance" so as to create some obligation on the latter's part to Jorden as an insured or to impose other liability upon it is devoid of merit. In view of this conclusion, it is unnecessary for us to consider the other points raised on appeal.

The judgment is affirmed.

Molinari, J., and Sims, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied August 24, 1966.